UNITED STATES of America,
Plaintiff–Appellee,

v.

Rakesh DHINGRA, Defendant–
Appellant.

No. 03–10001.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 12, 2004.

Filed June 8, 2004.

As Amended on Denial of Rehearing
July 23, 2004.

William Weiner, San Francisco, CA, for the appellant.

Kevin V. Ryan, United States Attorney, Hannah Horsley, Assistant United States Attorney, and Brian J. Stretch, Assistant United States Attorney, San Francisco, CA, for the appellee.

Before: WALLACE, NOONAN, and MMcKEOWN, Circuit Judges.

McKEOWN, Circuit Judge:

Rakesh Dhingra appeals his conviction on one count of using the Internet to solicit sexual activity from a minor, in violation of 18 U.S.C. § 2422(b). On appeal, Dhingra raises a host of constitutional challenges. We conclude that § 2422(b) is not facially unconstitutional as overbroad and vague, nor does it violate the First and Tenth Amendments for incorporating state criminal sexual offense statutes. We are also unpersuaded by Dhingra's multiple evidentiary and sentencing challenges. Accordingly, we affirm Dhingra's conviction and sentence.

## BACKGROUND

### A. FACTUAL BACKGROUND

In early July 2000, Rakesh Dhingra contacted the victim, then a 14–year–old girl, using the Internet-based[1] America Online Instant Messenger service ("IM").[2] Dhingra sent the girl an instant message after seeing her personal homepage, in which she referenced her age and a sexual experience she had during her freshman year of high school, the prior academic year. The victim recalled that, in their first conversation, the two discussed their ages and locations.

A few days later, Dhingra again contacted the girl over IM. In this conversation, Dhingra asked for explicit details about the sexual experience recounted on the girl's homepage, inquiring, "u hand jobbed him?"; "put in mouth?"; "but he fingered you?"; "did he insert inside you?"[3] Dhingra then attempted to arrange a meeting with the girl for that evening. During the same conversation, the victim stated that she "will only be 15," to which Dhingra, who was 40 years old at the time, replied, "age is only a number." Dhingra represented to the minor that he was 27 years of age, and later attempted to downplay their age difference, stating, "I look 23."

Over the next four days, Dhingra and the girl engaged in extensive IM conversations revolving around sexual topics. During these exchanges, Dhingra repeatedly urged the girl to sneak away to meet him or allow him to visit at her parents' house. In an effort to gain her trust, Dhingra assured he wanted "hugs and kisses" and "No sex here. At least not on the first 3

---

1. The parties stipulated at trial that, although Dhingra and the victim's computers were both located in California, the conversations were sent through America Online's computer server in Virginia and therefore traveled across state boundaries via a means of interstate commerce.

2. America Online Instant Messenger is an Internet service that enables users to chat in real-time dialogue "by typing messages to one another that appear almost immediately on the others' computer screens." *Reno v. ACLU*, 521 U.S. 844, 851–52, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997).

3. Conversations through instant messenger services are most often informal and contain typographical errors, shorthand, symbols, and abbreviations. For this reason, we quote the actual text of the messages.

meetings." Later in the same conversation, Dhingra asked the girl if she would perform oral sex on him, saying that he had changed his mind about limiting their physical contact and remarking that the victim "seem[ed] willing and flexible."

Dhingra's suggestions of sexual contact were unhindered by his knowledge of the victim's age. The girl explicitly stated on multiple occasions that she was only 14 years old, and Dhingra made multiple references to her age. At one point, Dhingra lamented that the girl should have been born when her mother was 28 years old rather than 38 years old "so u could be 25 now." When the girl expressed trepidation over meeting a stranger and the danger of being kidnapped, Dhingra replied that he "should be more afraid than you . . . cause you are a teen." As the conversations progressed, the two discussed in increasingly explicit terms the sex acts they planned to perform on each other when they met in person.

Dhingra and the victim also exchanged a series of e-mails. In multiple messages, Dhingra told the girl "I love you," and, in one message, the girl stated, "I can't wait until I am in your arms and I can hear your voice." The girl sent a graphic description of a sexual encounter, at the end of which she wrote, "I'm not saying all that will happen—if you don't want—but I hope I woke you up!"; Dhingra replied, "hope this happens ! ! ! ! ! Are we meeting tonite?"

Dhingra and the girl finally arranged to meet at a local community college. During their encounter, Dhingra fondled her beneath her clothing and later placed her hand on his penis. The two then proceeded into his automobile, where they further engaged in sexual activity. After the incident, the girl sought help from a friend and one of her teachers, who subsequently informed law enforcement officials of the events.

## B.   PROCEDURAL BACKGROUND

The government indicted Dhingra for one count of using a means of interstate commerce to entice a minor into engaging in sexual activity in violation of 18 U.S.C. § 2422(b).[4] The indictment specified that Dhingra induced the minor to engage in lewd or lascivious conduct as would constitute a criminal offense under California Penal Code § 288(c)(1), which criminalizes sexual contact between a victim 14 or 15 years of age and someone ten or more years older.[5] Dhingra filed a motion to dismiss the indictment, alleging that § 2422(b) is facially unconstitutional under the First, Fifth, and Tenth Amendments.

---

4.   18 U.S.C. § 2422(b) (2000) reads:

Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title, imprisoned not more than 15 years, or both.

5.   California Penal Code § 288(c)(1) provides:

Any person who commits [a lewd and lascivious act with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child], and the victim is a child of 14 or 15 years, and that person is at least 10 years older than the child, is guilty of a public offense and shall be punished by imprisonment in the state prison for one, two, or three years, or by imprisonment in a county jail for not more than one year. In determining whether the person is at least 10 years older than the child, the difference in age shall be measured from the birth date of the person to the birth date of the child.

The district court denied the motion to dismiss, and Dhingra proceeded to trial. At trial, Dhingra advanced the theory that it was the minor who induced him into sexual contact, and that he was therefore not guilty of inducement, enticement, persuasion, or coercion as defined by § 2422(b). Dhingra was found guilty by a jury and was sentenced to 24 months custody and three years probation. Dhingra now appeals his conviction and sentence.

## ANALYSIS

### A. FIFTH AMENDMENT VAGUENESS CHALLENGE

■ Section 2422(b) imposes criminal liability on a person who "knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so." Dhingra alleges that his conviction violates the Due Process Clause of the Fifth Amendment because the statute allegedly requires the minor to engage in criminal sexual activity, thereby making it unclear whether culpability is contingent on the minor's actions or those of the defendant. *See United States v. Adams,* 343 F.3d 1024, 1035 (9th Cir.2003) (explaining that a statute is void for vagueness if it fails to give adequate notice to people of ordinary intelligence concerning the conduct it proscribes).

Dhingra's reading of the statute defies the ordinary understanding of the statutory language and introduces vagueness where there is none. The plain language of the statute makes clear that the relevant inquiry is the conduct of the defendant, not the minor. The conduct that the statute criminalizes is persuading, inducing, enticing, or coercing illegal sexual activity—actions of the defendant alone. An individual of ordinary intelligence would have no doubt that criminal liability does not depend on whether the minor actually engaged in criminal sexual activity, but rather whether the defendant sought such sexual activity from a minor.[6]

### B. FIRST AMENDMENT OVERBREADTH CHALLENGE

■ In asserting a facial challenge to § 2422(b), Dhingra does not dispute that the First Amendment excludes from its ambit the persuasion or inducement of minors for sexual activity; rather, Dhingra alleges that § 2422(b) is not a specific and narrowly tailored regulation of content and, as a result, chills the legitimate speech of others. In short, he argues that the content of the speech is the crime.

This view of the statute—that § 2422(b) regulates speech rather than conduct—is foreclosed by our recent decision in *United States v. Meek,* 366 F.3d 705 (9th Cir. 2004). In rejecting an as-applied challenge to the statute, we held in *Meek* that § 2422(b) regulates conduct, not speech— "no otherwise legitimate speech [is] jeopardized by § 2422(b) because the statute only criminalizes conduct, i.e., the targeted inducement of minors for illegal sexual activity"—and that "speech is merely the vehicle through which a pedophile ensnares the victim." *Id.* at 721. We also held that § 2422(b) does not chill legitimate speech because the scienter and intent requirements of the statute sufficiently limit criminal culpability to reach only conduct outside the protection of the First Amendment. *Id.* at 721. Dhingra's argument that § 2422(b) is a content-based statute, left no doubt that the focus of the jury's inquiry was the conduct of the defendant, not the victim.

---

**6.** Dhingra's argument that the jury instructions were similarly ambiguous fails for the same reason. The jury instructions, like the statute, left no doubt that the focus of the jury's inquiry was the conduct of the defendant, not the victim.

regulation of speech is therefore misplaced.

Dhingra attempts to draw an analogy between § 2422(b) and *Reno v. ACLU*, arguing that § 2422(b) is unconstitutionally vague because it does not define the terms "persuade," "induce," "entice," or "coerce." We disagree. The Communications Decency Act ("CDA") provisions rejected in *Reno* differ from § 2422(b) in significant respects. The Supreme Court in *Reno* objected to the statute's failure to define the terms "indecent" and "patently offensive," contained respectively in 47 U.S.C. §§ 223(a)(1)(B)(ii) and 223(d)(1)(B). By virtue of the ambiguity, these terms effectively included "non-pornographic material with serious educational or other value." *Reno,* 521 U.S. at 877, 117 S.Ct. 2329. Thus, a parent who discusses sexual health issues with her teenage child could have been subject to prosecution under the CDA provision because, under the CDA's amorphous definition, such a discussion might be deemed "indecent." *Id.* at 878, 117 S.Ct. 2329.

In contrast, the terms "persuade," "induce," "entice," and "coerce," as used in § 2422(b), have a plain and ordinary meaning that does not need further technical explanation. More important to our analysis, lack of definitions for these terms poses no danger of chilling legitimate speech. The statute's intent provision, coupled with the requirement that the purpose of the conduct must be for criminal sexual activity, sufficiently excludes legitimate activity, including speech, from its scope. *Meek,* 366 F.3d at 718. Thus, to use the example from *Reno,* a parent who counsels her minor child about sexual health would not fall within the ambit of § 2422(b) because she did not persuade, induce, entice, or coerce her child to engage in illegal sexual conduct.

Dhingra claims that the Planned Parenthood organization could be prosecuted under § 2422(b) for giving teenagers information over the Internet about birth control and safe sex. Pointing to the organization's website, Dhingra argues that because some people believe sex education can promote promiscuity, the information can be read as inducing minors to have sex with non-minors. This attenuated argument glosses over the clear language of the statute, which requires the combination of three key elements: (i) knowing (ii) inducement or enticement of a minor (iii) to engage in sexual activity that is a criminal offense. A general informational website falls far short of being a knowing inducement of minor readers to participate in criminal sexual activity.

The focus of the statute is on the actor and the intent of his actions, and thus liability depends on the audience for whom the communication is intended and the conduct the communication seeks to provoke. For example, the statute would not criminalize speech that is received by minors but is not spoken with the intent to persuade, induce, entice, or coerce a minor into illegal sexual activity. In this delineation between criminal and lawful behavior lies a key distinction between the CDA provisions considered in *Reno* and § 2422(b). The CDA criminalized speech—even if directed to a general audience—once it became known to the speaker that a minor was accessing the information. Because the speaker's burden of restricting minors' access to otherwise legitimate speech would be so great, the statute effectively silenced the speaker altogether, imposing an impermissible content-based blanket restriction that included legitimate adult communication. *Reno,* 521 U.S. at 870–73, 117 S.Ct. 2329. In comparison, as a functional matter, § 2422(b) requires that an adult cease inducement for sex once he becomes aware

that the object of his inducement is a minor—hardly a burden to legitimate speech, as the statute does not prevent the speaker from communicating with other adults.[7]

## C. FIRST AND TENTH AMENDMENT CHALLENGES TO DECENCY STANDARDS

■ Section 2422(b) does not define the specific criminal sexual acts that fall within its ambit. Rather, it references "prostitution or any sexual activity for which any person can be charged with a criminal offense." Dhingra challenges the statute under the First and Tenth Amendments, alleging constitutional infirmities because the statute alludes to local criminal laws in determining whether the sexual activity solicited from the minor triggers culpability under § 2422(b).

Specifically, Dhingra argues that § 2422(b) violates the First Amendment by imposing a nationwide standard of decency with respect to sexual activity. Although it is well settled that the proper metric of obscenity is the standard of the community, not the nation, see *Miller v. California*, 413 U.S. 15, 32–34, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), Dhingra draws an imperfect analogy between obscenity restrictions and § 2422(b). Because the statute regulates conduct, not speech, it is inappropriate to bootstrap our First Amendment jurisprudence into the context of criminal sexual contact. The collateral speech at issue in § 2422(b) is not, like obscenity, something that might fall under First Amendment protection depending on which community's standards apply; rather, § 2422(b) contemplates the category of conduct in which speech is the vehicle for the commission of a crime, which does not depend on "community standards" as that term is understood in the First Amendment context. Simply put, the inducement of minors to engage in illegal sexual activity enjoys no First Amendment protection. *Meek*, 366 F.3d at 721.

■ We similarly reject Dhingra's First Amendment argument that § 2422(b)'s reference to local criminal laws renders the statute overbroad. In *Ashcroft v. ACLU*, 535 U.S. 564, 122 S.Ct. 1700, 152 L.Ed.2d 771 (2002), the Supreme Court explained that a statute that is national in scope may rely on community standards for determining what is harmful to minors without being substantially overbroad for the purposes of the First Amendment. *Id.* at 585, 122 S.Ct. 1700. *See also Hamling v. United States*, 418 U.S. 87, 106, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974) ("The fact that distributors of allegedly obscene materials may be subjected to varying community standards in the various federal judicial districts into which they transmit the materials does not render a federal statute unconstitutional."); *Sable Communications of Cal., Inc. v. FCC*, 492 U.S. 115, 126, 109 S.Ct. 2829, 106 L.Ed.2d 93 (1989) ("If Sable's audience is comprised of differ-

---

7. We note that every other court to address the issue has similarly concluded that § 2422(b) is not overbroad under the First Amendment. *See United States v. Panfil*, 338 F.3d 1299, 1301 (11th Cir.2003) (per curiam) (rejecting overbreadth and void for vagueness challenges to § 2422(b)); *United States v. Bailey*, 228 F.3d 637, 639 (6th Cir.2000) (attempt provision of § 2422(b) constitutional because restriction "does not infringe on any constitutionally protected rights of adults"), *cert. denied*, 532 U.S. 1009, 121 S.Ct. 1737, 149 L.Ed.2d 661 (2001); *U.S. v. Riccardi*, 258 F.Supp.2d 1212, 1226 (D.Kan.2003); *United States v. Miller*, 102 F.Supp.2d 946, 947–48 (N.D.Ill.2000); *United States v. Powell*, 1 F.Supp.2d 1419, 1421 (N.D.Ala.1998), *aff'd*, 177 F.3d 982 (11th Cir.1999); *United States v. Kufrovich*, 997 F.Supp. 246, 254 (D.Conn. 1997), *overruled on other grounds by U.S. v. Griffith*, 284 F.3d 338 (2d Cir.2002).

ent communities with different local standards, Sable ultimately bears the burden of complying with the prohibition on obscene messages.").

It is of little consequence that communication over the Internet might present difficulties in determining which community standards might apply.[8] That the persuasion of others for sexual activity occurs over the Internet offers no talismanic protection from the established rule that "the burden of complying with the statute" rests with the person doing the persuading. *See Ashcroft v. ACLU*, 535 U.S. at 581–82, 122 S.Ct. 1700. The fact that various community standards might apply does not make the statute unconstitutional. *See Hamling*, 418 U.S. at 106. Any concern with not knowing the identity or whereabouts of the person at the other end of the e-mail, IM, or website is addressed by the statute's intent requirement, both with respect to the minor and the illegal sexual activity.

■ Dhingra's related Tenth Amendment[9] challenge is similarly unavailing. Dhingra argues that because § 2422(b) does not articulate when a particular state criminal law applies to a defendant, the statute incorporates all state and municipal laws across the country, thereby infringing upon the state's police power. As Dhingra interprets the statute, § 2422(b) makes criminal the engagement in sexual activity that is a crime under the law of any state, regardless of whether that state has juris-

diction over the defendant. We decline to embrace this far-flung interpretation of the statute and read § 2422(b) to incorporate only the laws "for which a person could be charged with a criminal offense," i.e., the law of the venue that would have jurisdiction over the defendant.

We note at the outset that we have upheld as constitutional federal statutes that incorporate state laws. *See United States v. Iverson*, 162 F.3d 1015, 1021 (9th Cir.1998) (rejecting vagueness challenge under the Due Process Clause); *United States v. E.C. Investments, Inc.*, 77 F.3d 327, 329, 331–32 (9th Cir.1996) (rejecting notice challenge under the Due Process Clause). Also, in the RICO context, other courts have held that a statute's mere allusion to state crimes does not violate the Tenth Amendment because the reference does not supplant state crimes, but instead identifies the type of conduct that serves as a predicate to prosecution under RICO. *See United States v. Kehoe*, 310 F.3d 579, 588 (8th Cir.2002); *cf. United States v. Carrillo*, 229 F.3d 177, 182 (2d Cir.2000); *United States v. Crosby*, 20 F.3d 480, 484 (D.C.Cir.1994). Similarly, because a § 2422(b) violation is its own offense subject to prosecution independent of other underlying offenses, the state's power to prosecute criminal sexual conduct under state law is in no way abrogated.

Contrary to Dhingra's suggestion, the sky is not falling; his assertion that § 2422(b) allows prosecution under the dis-

---

8. The Supreme Court concluded in *Ashcroft v. ACLU* that, because the Child Online Protection Act ("COPA") is narrow in scope and adequately defines the statutory terms designating culpability, "requiring a speaker disseminating material to a national audience to observe varying community standards does not violate the First Amendment." *Id.* at 580, 122 S.Ct. 1700. To the extent that we entertain Dhingra's notion that § 2422(b) might cover some form of speech, we emphasize

that, like COPA, § 2422(b) is narrowly tailored to criminal activity and sufficiently defines the operative terms delineating proscribed activity. *See Meek*, 366 F.3d at 718.

9. The Tenth Amendment reads: "The powers not delegated to the United States, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. CONST. amend. X.

parate laws of fifty states misapprehends the statute. It would indeed be problematic if the statute permitted the prosecution of a defendant under the law of any jurisdiction, regardless of where the criminal conduct occurred or whether a charge could legitimately be brought. But the plain language of the statute limits its application to situations in which an individual could actually be prosecuted.

The practical reality is that the application of § 2422(b) is limited to the jurisdiction and venue restrictions of state and federal law. *Cf. United States v. Yazzie,* 693 F.2d 102, 104 (9th Cir.1982) (federal criminal law can properly incorporate the criminal law of the state in which the offenses occurred). In adopting this reading of the statute, the alleged constitutional concerns evaporate. Just as significantly, this approach is more functionally sound than the interpretation Dhingra advances. As would be the case in the speech context, "[a]bsent geographic specification, a juror applying community standards will inevitably draw upon personal 'knowledge of the community or vicinage from which he comes.' " *Ashcroft v. ACLU,* 535 U.S. at 576–77, 122 S.Ct. 1700. That is, reliance on local standards or law assumes that the defendant would be judged in accordance with the community in which he is prosecuted, i.e., the venue and jurisdiction flowing from the commission of the § 2422(b) violation. Accordingly, we conclude that § 2422(b) does not violate the Tenth Amendment by incorporating criminal sexual activities according to federal or state criminal laws.

## D. EVIDENTIARY CHALLENGES

### 1. SEXUAL CONTACT—RULE 403

■ At trial, the victim and Agent Esposito testified that Dhingra met with the victim and fondled her. Dhingra argues that because sexual contact is not always necessary to establish a violation of § 2422(b), the prejudice of this testimony outweighed its probative value in violation of Rule 403. *See* FED. R. EVID. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. . . .")

We conclude the district court properly admitted the testimony of the victim and Agent Esposito. Dhingra's argument is tantamount to saying that Rule 403 precludes evidence of the commission of a crime if the criminal statute includes an attempt provision. This is not so. Testimony regarding sexual contact with a minor is particularly relevant in the context of a prosecution under § 2422(b) because intent is a key element of the crime. Merely engaging in sexually explicit communication does not constitute a § 2422(b) violation; the defendant must engage in the conversation *for the purpose of* inducing a minor into sexual activity. What could be more probative of illicit purpose than carrying through with the sex act itself? Although evidence of sexual contact is not required under § 2422(b), it is certainly probative.

This testimony was all the more relevant given Dhingra's denial of his criminal intentions. *See United States v. Allen,* 341 F.3d 870, 888 (9th Cir.2003) (rejecting a Rule 403 challenge because an admission offered was for a related but not conclusive element of the crime, and the government was entitled to prove its case-in-chief).

Nor did the possibility of prejudice outweigh the probative value of the testimony. The measure of undue prejudice is whether admission of the evidence created "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Allen,* 341 F.3d at 886 (quoting the Rule 403 adviso-

ry committee notes). Dhingra does not attempt to explain how the contested testimony meets this standard; he simply asserts that such testimony was "inflammatory." This bald assertion does not carry the day. That evidence of his conduct may be disturbing to some members of the jury does not mean that Rule 403 precludes its admission.

## 2. PRIOR CONDUCT—RULE 404(b)

■ At trial, the government sought to introduce evidence from several minors whom Dhingra contacted over IM and engaged in sexually explicit conversations. The district court admitted the testimony of one of these witnesses under Federal Rule of Evidence 404(b) as probative of Dhingra's *modus operandi* and intent in contacting the minor.

Rule 404(b) generally provides that evidence of prior crimes, acts, or wrongs is not admissible for the purpose of demonstrating a propensity to commit a crime. However, the rule allows evidence of other acts so long as its introduction is for the purpose of demonstrating elements unrelated to the defendant's character, such as intent and motive. *See United States v. Chea,* 231 F.3d 531, 534 (9th Cir.2000); *United States v. Tsinnijinnie,* 91 F.3d 1285, 1288–89 (9th Cir.1996).

The jury heard testimony that, three years earlier, when the witness was 17 years old and living in New Mexico, Dhingra contacted her over IM to solicit a sexual encounter. When they met, Dhingra fondled her and asked her to return to his home to have sex. The witness further testified that when she refused, Dhingra told her he loved her, grabbed her, and attempted to force her into going home with him. The witness stated that she hit him and ran away, and that Dhingra followed her, beat on her door, and pleaded for her to let him inside her dormitory.

Dhingra claims that the witness's testimony was not probative of his intent because, under the laws of New Mexico, it was legal to engage in sexual activity with a 17–year–old, and therefore did not demonstrate the intent to engage in criminal sexual activity with a child 14 or 15 years of age. We reject this contention and conclude that the testimony satisfies the criteria for admissibility under Rule 404(b). *See United States v. Arambula–Ruiz,* 987 F.2d 599, 602 (9th Cir.1993) (evaluating admissibility under Rule 404(b) for materiality, similarity, sufficiency, and proximity of the prior act evidence to the offense now charged). Evidence that sheds light on Dhingra's purpose in contacting the victim is material, as his intent in communicating with a minor is an essential element of criminal liability under § 2422(b). Further, the testimony of a single witness, as present in this case, satisfies the low-threshold test of sufficient evidence for the purposes of Rule 404(b). *See United States v. Hinton,* 31 F.3d 817, 823 (9th Cir.1994). Also, the testimony, which recalled events that occurred three years prior, was sufficiently close in time. *Cf. United States v. Johnson,* 132 F.3d 1279, 1283 (9th Cir.1997) (holding that thirteen years since a prior bad act was not too remote in time).

Significantly, the evidence described factually similar incidents that center on the inducement of a minor who has not achieved 18 years of age. For the purposes of Rule 404(b), Dhingra's effort to distinguish between the prior act, which involved a 17–year–old, and the current violation, which involves a 14–year–old, is unavailing. Notwithstanding the fact that his prior conduct was legally permissible, the prior incident was highly probative of Dhingra's intent and *modus operandi* with respect to the present act. In both instances, Dhingra contacted a minor under

the age of 18 years over IM for the purpose of soliciting sexual activity, arranged to meet, and at the meeting attempted to engage in sexual activity by persuasion and coercion. The factual difference between the two acts is that, in this case, Dhingra actually engaged in sexual activity; this difference does not warrant exclusion under Rule 404(b).

We also note that, in this case, the danger of undue prejudice is low. The district court cabined potential prejudice by limiting testimony to a single incident and by explicitly instructing the jury to consider the testimony "only as it bears on the defendant's intent and for no other purpose." No additional clarifying jury instruction was required. Admission of this testimony, which was narrowly tailored to the issue of intent, was in accord with Rule 404(b).

## E. JURY INSTRUCTIONS

Dhingra's counsel initially suggested jury instructions to define the terms "persuade," "induce," and "entice." He then backed off and said, "We jointly agree [that] no definitions be given in the instructions, and the parties will be free to argue ... a definition during their closing arguments." During jury deliberations, the jury asked for a dictionary, a request the judge declined. Dhingra now contends that the failure to include definitions in the jury instructions deprived the jury of a meaningful understanding of the statutory terms, allowing the jury to convict him regardless of whether the victim would have engaged in the sexual conduct on her own.

■ Because Dhingra's counsel failed to lodge this objection at trial, we review for plain error. *United States v. Carlson*, 235 F.3d 466, 470 (9th Cir.2000). Under this highly deferential standard, Dhingra must demonstrate that there actually is an er-

ror, that the error is obvious and affects substantive rights, and that the error seriously affects the fairness, integrity, and public reputation of judicial proceedings. *United States v. Anderson*, 201 F.3d 1145, 1149–50 (9th Cir.2000). Dhingra's challenge cannot meet the showing required under plain error review. The terms "persuade," "induce," and "entice" have plain and ordinary meanings within the statute, and the court had no obligation to provide further definitions.

■ In a related argument, Dhingra claims that the ambiguity of a term like "persuade" permitted the government to argue that the victim's conduct was irrelevant. Proceeding on the theory that the victim induced him and that § 2422(b) does not apply if the victim was partially willing to engage in the sexual contact, Dhingra proposed the following jury instruction:

> .... If you conclude that the lewd and lascivious conduct was [the victim's] idea, then you must find Mr. Dhingra not guilty. Even if you conclude that Mr. Dhingra wished or intended [the victim] to engage in lewd or lascivious conduct, you must find him not guilty unless you also find that he persuaded, induced, or enticed her to engage in such conduct, and she would not otherwise have done so.

Dhingra's argument collapses because he misconstrues the nature of liability under § 2422(b); his proposed jury instruction reflects this mistake. In effect, Dhingra claims that entrapment by the victim ameliorates any inducement on his part. Again, this reading of the statute mistakenly changes the focus from the defendant to the victim. The victim's willingness to engage in sexual activity is irrelevant, in much the same way that a minor's consent to sexual activity does not mitigate the offense of statutory rape or child molesta-

tion. *Cf. United States v. Rashkovski*, 301 F.3d 1133, 1136–37 (9th Cir.2002) (recognizing that § 2422(a) liability does not require a defendant to create out of whole cloth a woman's desire to travel to engage in prostitution). So long as a defendant's actions constitute the act of persuading, inducing, enticing, or coercing a minor to engage in criminal sexual activity, § 2422(b) applies. The district court did not err in rejecting the proposed instruction, which was a misstatement of the law.

## F. SENTENCING

The United States Sentencing Guidelines ("U.S.S.G.") allow a two-level reduction in the level of offense"[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). Dhingra claims it was error for the district court to deny his request for a downward adjustment for acceptance of responsibility. In reviewing this decision for clear error, *see United States v. Villasenor–Cesar*, 114 F.3d 970, 973 (9th Cir.1997), we are mindful of the fact that "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review." U.S.S.G. § 3E1.1, comment (n.5).

It is well settled that a defendant who exercises his constitutional right to a trial does not automatically forfeit the benefit of the adjustment for acceptance of responsibility. *See United States v. McKinney*, 15 F.3d 849, 853 (9th Cir.1994). For example, a defendant who goes to trial in order to challenge the validity of the government's theory may, in certain circumstances, still receive a downward adjustment for acceptance of responsibility. *See United States v. Ochoa–Gaytan*, 265 F.3d 837, 844 (9th Cir.2001); *United States v. McKittrick*, 142 F.3d 1170, 1178 (9th Cir.1998). Even

if he contests his guilt at trial, there are rare circumstances in which a defendant who manifests genuine contrition for his acts may merit an adjustment. *See McKinney*, 15 F.3d at 853 (holding that adjustment for acceptance of responsibility is appropriate where the district court rebuffed a defendant's attempts to plead guilty).

■ This case, however, does not present a circumstance justifying the downward adjustment. Dhingra's trial strategy rested on the theory that it was the minor who induced him and not, as the prosecution asserted, he who induced the minor. This defense is hardly an acceptance of responsibility; rather, it is a dispute over an essential element of his guilt. Even where a defendant cooperates with authorities after his arrest and calls no witnesses at trial but refuses to admit an essential element of guilt, the district court may properly deny a reduction in sentence. *See United States v. Fleming*, 215 F.3d 930, 940 (9th Cir.2000); *United States v. Mohrbacher*, 182 F.3d 1041, 1052–53 (9th Cir.1999); *see also* U.S.S.G. § 3E1.1, comment. (n.2) ("This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt. . . ."). Because Dhingra did not meet his burden of demonstrating "genuine contrition for his acts," it was not clearly erroneous for the district court to deny downward adjustment for acceptance of responsibility. *McKinney*, 15 F.3d at 853.

**AFFIRMED.**