UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 16-50013 |
| Plaintiff-Appellee, | D.C. No. 3:13-cr-02297-JLS-1 Southern District of California, San Diego |
| v. | |
| TONY LEE MCLEOD, AKA Tony, | ORDER* |
| Defendant-Appellant. | |

Before: BEA and MURGUIA, Circuit Judges, and MOLLOY,** District Judge.

The memorandum disposition filed on August 28, 2018, is amended as set out in the attached Amended Memorandum Disposition.

With that amendment, the majority of the panel has voted to deny the petition for panel rehearing. Judge Murguia and Judge Bea voted to deny the petition for rehearing en banc, and Judge Molloy has recommended denial. The full court was advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

---

\* This order is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Donald W. Molloy, United States District Judge for the District of Montana, sitting by designation.

The petition for rehearing and rehearing en banc is therefore **DENIED** (Doc. 59).

No further petitions for rehearing will be accepted in this case.

NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

FEB 6 2019

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 16-50013 |
| Plaintiff-Appellee, | D.C. No. 3:13-cr-02297-JLS-1 |
| v. | |
| TONY LEE MCLEOD, AKA Tony, | AMENDED MEMORANDUM[*] |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Southern District of California
Janis L. Sammartino, District Judge, Presiding

Argued and Submitted April 11, 2018
Pasadena, California

Before: BEA and MURGUIA, Circuit Judges, and MOLLOY,[**] District Judge.

Tony Lee McLeod was convicted by a jury of nine counts of persuading or attempting to persuade a minor to engage in sexually explicit conduct for the purpose of producing an image of that conduct, 18 U.S.C. § 2251(a), (e), one count of traveling with the intent to engage in illicit sexual conduct, 18 U.S.C. §2423(b),

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Donald W. Molloy, United States District Judge for the District of Montana, sitting by designation.

and one count of transportation of a minor with the purpose of engaging in illicit sexual conduct, 18 U.S.C. § 2423(a). McLeod appeals his conviction, alleging the district court abused its discretion by: (1) failing to make a reliability finding on purported expert testimony concerning information obtained from a cell phone through a Cellebrite device, which he claims is required by Federal Rule of Evidence 702; (2) admitting testimony from one of the victims about physical contact between McLeod and the victim, over McLeod's objection based on Rule 403; and (3) failing to sever the § 2251 production counts from the § 2423 travel and transport counts. McLeod also asserts that § 2251 is unconstitutional as applied to him.

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the district court's evidentiary rulings and denial of McLeod's motion to sever for abuse of discretion. *See Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 460 (9th Cir. 2014) (en banc); *United States v. Beck*, 418 F.3d 1008, 1013 n.3 (9th Cir. 2005); *United States v. Leon-Reyes*, 177 F.3d 816, 821 (9th Cir. 1999); *United States v. Mayfield*, 189 F.3d 895, 899 (9th Cir. 1999). We review de novo his constitutional challenge to § 2251. *See United States v. Purdy*, 264 F.3d 809, 811 (9th Cir. 2001). We affirm.

1.      McLeod argues the district court abused its discretion when it admitted Detective Damian Jackson's testimony at trial without making a

2

reliability finding under Rule 702. Rule 702 governs the admission of expert testimony and requires that proposed expert testimony be reliable. Further, under Rule 702, where the testimony's "factual basis, data, principles, methods, or [its] application" is called into question, a trial judge must make a reliability determination. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)).

It appears that the district court overruled McLeod's objections to Detective Jackson's testimony because the district court found that Detective Jackson had the experience and knowledge to present the contested documents, and nothing in his testimony required the district court to make additional findings about the testimony's reliability. *See id.* At trial, Detective Jackson testified about how he used a Cellebrite device during the course of his investigation to download information from one of the victim's cell phones onto a thumb drive and then testified about the contents of that information. He testified about what Cellebrite does and how he used it in the course of his investigation to extract information from the victim's cell phone. His investigation and Cellebrite use yielded readable text of the downloaded data, a link to images downloaded from the victim's cell phone, and "extraction reports." Detective Jackson also testified that he could select what data to extract from the phone through Cellebrite. In short, Detective Jackson testified about his use and interaction with Cellebrite—and how he

extracted data from one of the victim's phones in this case. We have previously allowed testimony similar to Detective Jackson's testimony without requiring that the testimony meet Rule 702's expert testimony requirements. *See United States v. Seugasala*, 702 F. App'x 572, 575 (9th Cir. 2017) ("The officers who followed the software prompts from Cellebrite and XRY to obtain data from electronic devices did not present testimony that was based on technical or specialized knowledge that would require expert testimony.").[1]

Nevertheless, the dissent asserts that Detective Jackson provided expert testimony subject to Rule 702. The dissent believes the district court erred by not making a reliability finding regarding Detective Jackson's testimony and accepting the information obtained through Cellebrite. However, even assuming that the district court erred in admitting Detective Jackson's testimony, the error was harmless. *See United States v. Spangler*, 810 F.3d 702, 708 (9th Cir. 2016) (holding that even assuming that the district court's decision to bar expert testimony was error, such error was harmless); *Estate of Barabin*, 740 F.3d at 464 (citing *United States v. Rahm*, 993 F.2d 1405, 1415 (9th Cir. 1993) (explaining that this court reviews improperly admitted expert testimony for harmless error). The record reflects that testimony from one of the victims and from one of the victim's

---

[1] That the *Seugasala* court reviewed for plain error is a distinction that does not change the fact that our court has previously allowed testimony similar to Detective Jackson's testimony.

4

aunts—in addition to testimony from Sarah Kranz, a computer forensics expert whose qualifications McLeod does not contest—independently supported the reliability of the information in the Cellebrite report. Therefore, assuming Detective Jackson's testimony about the Cellebrite report was admitted in error, the error was harmless because McLeod's conviction was not ultimately attributable to that error.

In sum, the district court did not abuse its discretion in admitting Detective Jackson's testimony. *See Harper v. City of Los Angeles*, 533 F.3d 1010, 1030 (9th Cir. 2008) ("We afford broad discretion to a district court's evidentiary rulings."); *see also Kumho Tire*, 526 U.S. at 149. And even if the district court erred, such error was harmless. *See Estate of Barabin*, 740 F.3d at 464.

2. The district court also did not abuse its discretion in admitting testimony from one of the victims concerning touching between the victim and McLeod in the car on the way to the Los Angeles International Airport and on the flight to Florida. The parties agree that the disputed testimony was probative of the transport and travel counts, but the testimony had low probative value as to the production counts. *See United States v. Gonzalez-Flores*, 418 F.3d 1093, 1098 (9th Cir. 2005) (explaining that the trial court should weigh the prejudicial effect of certain evidence against its probative value). McLeod points to no authority holding that evidence must be probative as to all charges against a defendant to be

5

admissible under Rule 403, which permits a district court to "exclude relevant evidence if its probative value is substantially outweighed by," among other things, unfair prejudice. *See United States v. Jayavarman*, 871 F.3d 1050, 1063 (9th Cir. 2017) (quoting Fed. R. Evid. 403).

McLeod argues that the district court erred by admitting the victim's testimony regarding the touching because it was not probative of the production counts, irrelevant to the production count related to the other victim, and its graphic nature was highly prejudicial. However, McLeod points to no authority holding that testimony must be probative of all charges.[2]

Moreover, the contested testimony was not unduly prejudicial. Given all the charges against McLeod, and the sexually explicit and graphic nature of the other evidence presented at trial that was probative of the production charges, the district court permissibly concluded that in this context, admitting the victim's testimony was not extraordinarily inflammatory. *Jayavarman*, 871 F.3d at 1063–64 (holding that the district court did not err under Rule 403 where it admitted audio recordings of the defendant's statements that he had sex with the victim when she was thirteen or fourteen years old because the probative value of the evidence was very high and that "value was not substantially outweighed by any risk of unfair prejudice that might have arisen from the evidence, especially in the context of other

---

[2] The dissent makes similar arguments as McLeod on this issue.

evidence adduced at trial"); *United States v. Higuera-Llamos*, 574 F.3d 1206, 1209 (9th Cir. 2009) ("The district court is to be given 'wide latitude' when it balances the prejudicial effect of proffered evidence against its probative value.") (citation omitted). Although courts must take care to prevent emotionally charged evidence that may lead to a decision on an improper basis, *see Gonzalez-Flores*, 418 F.3d at 1098, we review a district court's decision to admit or exclude evidence with great deference, *see United States v. Hinkson*, 585 F.3d 1247, 1267 (9th Cir. 2009). The dissent reweighs the testimony's prejudicial value without considering the deference we afford district courts. On this record, it was not an abuse of discretion for the district court to admit the contested testimony.

3.    Assuming McLeod did not waive his motion to sever the transport and travel counts from the production counts by failing to renew the motion at the close of evidence, McLeod bears the burden of proving the undue prejudice he suffered from the joint trial. *See United States v. Vasquez-Velasco*, 15 F.3d 833, 845 (9th Cir. 1994). Federal Rule of Criminal Procedure 14 "sets a high standard for a showing of prejudice." *Id.* McLeod argues that because the contested victim testimony had no bearing on the production charges, only on the travel and transportation count, its admission prevented him from receiving a fair trial. The dissent argues substantially the same thing as McLeod. However, as discussed above, the district court did not err in admitting the victim's testimony regarding

touching between the victim and McLeod.

Moreover, we have previously held that district courts do not abuse their discretion by denying motions to sever in cases that involve potentially inflammatory evidence. *See Vasquez-Velasco*, 15 F.3d at 846–47 (holding that the district court did not abuse its discretion in denying defendant's motion to sever where the defendant did not "present[] any reasons, other than the emotionally-charged nature of [one of the] murder[s], as to why the jury would be unable to consider separately the evidence that applies to the two pairs of murders."); *United States v. Smith*, 795 F.2d 841, 850–51 (9th Cir. 1986) (holding that the district court did not abuse its discretion in refusing to sever a felon in possession of a firearm charge from child pornography counts under Federal Rule of Criminal Procedure 14 where defendant argued evidence of the gun would "inflame[] an already emotionally charged trial and invited the jury to infer that Smith would have used the gun to threaten or kill the children if they had refused to allow him to take their pictures").

Here, McLeod's charges all arose from related conduct concerning his communication with the victims and the subsequent enticement of one of the victims to leave with McLeod for Florida with the intention of engaging in illicit sexual conduct. Indeed, McLeod's underlying conduct as to all charges was sufficiently related such that the nature of the evidence, within the context of this

8

case, was not unduly inflammatory. *See Jayavarman*, 871 F.3d at 1063–64.

Further, for the reasons discussed above, trying all counts in the same trial "was not so manifestly prejudicial that it outweigh[ed] the dominant concern with judicial economy and compel[led] the exercise of the court's discretion to sever." *United States v. Lopez*, 477 F.3d 1110, 1116 (9th Cir. 2007) (internal quotation marks and citation omitted) (alterations in original). Accordingly, McLeod has not met his burden of proving that he was prejudiced from the joint trial. *See Vasquez-Velasco*, 15 F.3d at 845.

4.    Finally, McLeod argues that his due process rights were violated when he was convicted under 18 U.S.C. § 2251(a) without requiring proof that he knew the victims were underage. McLeod's constitutional challenge is precluded by *United States v. U.S. Dist. Court for Cent. Dist. of Cal., L.A.*, 858 F.2d 534, 538 (9th Cir. 1988) (holding that "knowledge of the minor's age is not necessary for conviction under section 2251(a).").

Accordingly, the district court did not commit any reversible error on any issue on appeal, and we affirm.

**AFFIRMED.**

9

*United States v. Tony Lee McLeod, AKA Tony*, No. 16-50013

MOLLOY, District Judge for the District of Montana, dissenting in part and concurring in part:

I respectfully disagree with the majority reasoning and rulings in this case.

1. The district court abused its discretion when it admitted Detective Jackson's expert testimony without making a reliability finding, and the error prejudiced McLeod.

First, Jackson provided expert testimony. *See* Fed. R. Evid. 702(a). Jackson testified based on technical knowledge—specifically, technical knowledge about the use of the Cellebrite device. Jackson testified as to what the Cellebrite device is, what it does, how it works, and what it produces. Jackson also testified he performed a "logical extraction" on the Blackberry, and explained the resulting report to the jurors at length.

The majority cites to *United States v. Seugasala* for the proposition that testimony by an officer who uses Cellebrite to extract the contents of a cellular device is not expert testimony. 702 F. App'x 572, 575 (9th Cir. 2017). But *Seugasala*, a non-binding memorandum opinion, involved plain error review, not abuse of discretion. Moreover, simply because the user can follow prompts from the program does not mean that expert testimony is not required or that the underlying technology is reliable. In the context of this case, McLeod presented

evidence that the Cellebrite device Jackson used can produce significant errors, including not acquiring files and misreporting data.

Even if Jackson only provided lay testimony, as the majority found, he nevertheless received the court's expert imprimatur in front of the jury. *See Barefoot v. Estelle*, 463 U.S. 880, 926–27 (1983), *superseded by statute on other grounds*, Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104–132, 110 Stat. 1214 (1996), *as recognized in Slack v. McDaniel*, 529 U.S. 473 (2000) ("Where the public holds an exaggerated opinion of the accuracy of scientific testimony, the prejudice is likely to be indelible."). The district court stated that, based on Jackson's experience, he was "more than qualified" to testify about the Cellebrite report. When McLeod objected to further introduction of the Cellebrite report into evidence, the district court stated Jackson "[had] . . . the experience and the knowledge to present the[] documents." Later, the district court overruled McLeod's relevance objection as the government questioned Jackson about his continued use of Cellebrite in the years *following* the extraction at issue in this case. In other words, the district court first endorsed Jackson as an expert, and then permitted the government to bolster Jackson's credentials in front of the jury.

Second, the district court made no reliability finding before admitting Jackson's testimony and the Cellebrite report. "[T]he failure to make an explicit

reliability finding [i]s error," even where "the district court's ruling suggests an implicit finding of reliability." *United States v. Jawara*, 474 F.3d 565, 583 (9th Cir. 2007) (citation omitted).

While erroneous admission of expert testimony is harmless where the record shows the witness was reliable and qualified, *see United States v. Figueroa-Lopez*, 125 F.3d 1241, 1247 (9th Cir. 1997), the record here casts doubt on Jackson's qualifications. Although Jackson testified he holds multiple computer forensic certifications, none of them pertained to Cellebrite, and they all post-dated his work with the victim's Blackberry. He was not certified by Cellebrite to perform extractions, seemed unsure about the types of Cellebrite extractions that could be performed, and did not know when the device he used was last updated. Jackson's lack of certification is particularly troubling given that, as McLeod notes, Cellebrite itself "strongly encourages all users to attend certification training in order to best understand—and explain—how to extract, decode, analyze and document mobile device evidence using these advanced methodologies." In short, Jackson's testimony did not demonstrate reliable scientific or technical principles reliably applied. *See* Fed. R. Evid. 702.

Third, Jackson's report and testimony prejudiced McLeod. Where evidence has been improperly admitted, this Court must "consider whether the error was harmless." *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 464 (9th Cir.

3

2014) (quotation and citation omitted). Prejudice is presumed, and the burden is on the benefitting party to show "that it is more probable than not that the jury would have reached the same verdict even if the evidence had not been admitted." *Id.* at 464–65 (quotation and citation omitted). "Prejudice is at its apex when the district court erroneously admits evidence that is critical to the proponent's case." *Id.* at 465.

Jackson's testimony and the Cellebrite report were critical to the government's case. The government relied on the report to establish which messages were sent and received, as well as the time of each message. The timing of the messages rebutted McLeod's claim that he did not know the victim was a teenager when the images were produced. The government also used the Cellebrite report to create demonstrative exhibits showing a "more readable" format that was "closer to the way [the messages] would have looked on the [Blackberry] device when the individual was holding it." The government relied on that report in closing.

In sum, the district court erred when it allowed Detective Jackson to provide expert testimony without making a reliability finding and accepted the Cellebrite report he prepared. That error was not harmless because it involved evidence critical to the government's case, prejudicing McLeod. Reversal and a new trial is appropriate for this reason and for the additional reasons set forth below.

4

2. The district court abused its discretion when it admitted the victim's testimony that McLeod molested him. While that testimony is relevant to McLeod's intent regarding the travel and transportation counts, *United States v. Dhingra*, 371 F.3d 557, 565 (9th Cir. 2004), it had limited, if any, relevance to the production counts, and its probative value was substantially outweighed by its prejudicial effect, Fed. R. Evid. 403.

Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." *Id.* "The probative value of evidence against a defendant is low where the evidence does not go to an element of the charge." *United States v. Gonzalez-Flores*, 418 F.3d 1093, 1098 (9th Cir. 2005). In this case the proper balance of fairness and "judicial economy" should tip to the defendant's right to a fair trial.

McLeod faced nine counts of persuading, or attempting to persuade, a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of the conduct, in violation of 18 U.S.C. § 2251; one count of traveling for the purpose of engaging in illicit sexual conduct with a minor, in violation of 18 U.S.C. § 2423(b); and one count of transporting a minor with the intent of engaging in criminal sexual activity, in violation of 18 U.S.C. § 2423(a). Of these eleven charges, the touching testimony was probative of only two—the travel and transportation counts—because those required the government to prove McLeod

5

had the intent to engage in illicit sexual conduct. *See Dhingra*, 371 F.3d at 565 (where intent was a "key element" of the charge—coercion of a minor in violation of 18 U.S.C. § 2422—testimony that defendant fondled victim was not unduly prejudicial, even though sexual contact was not an element of the offense). Morever, "what counts as the Rule 403 'probative value' of an item of evidence, as distinct from its Rule 401 'relevance,' may be calculated by comparing evidentiary alternatives." *Old Chief v. United States*, 519 U.S. 172, 184 (1997). In this case, the text messages provided alternative evidence of McLeod's intent, further diminishing the probative value of the touching testimony even as to those two counts. *See id.*

On the other hand, the testimony was not probative of any of the elements the government had to prove for the production counts, which were that (1) the victims were minors, (2) McLeod persuaded (or attempted to persuade) them to take part in sexually explicit conduct for the purpose of producing a visual depiction, and (3) the visual depictions were transported in or affecting interstate or foreign commerce by any means, including by computer. 18 U.S.C. § 2251(a). Sexual contact between the defendant and the victim is not an element, as the government conceded in its pretrial brief opposing severance. The district court reasoned that the testimony "would be relevant to rebut a defense that the defendant did not know that the victim was a minor" because "the subsequent acts

6

tend[ed] to rebut the inference raised by such a defense that the defendant would not have committed the acts had he known the minor's age." But the victim testified before McLeod presented his case, which forced McLeod into rebuttal regardless. The same forced hand ruling took place in a pretrial exchange between the court and defense counsel. Further, one of the production counts involved a different victim than the one who testified about the physical contact, meaning not only that the touching testimony was not probative of that count, but was not even relevant.

McLeod suffered unfair prejudice because of the touching testimony. "The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief*, 519 U.S. at 180. "In other words, unfairly prejudicial evidence is that having 'an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one.'" *Gonzalez-Flores*, 418 F.3d at 1098 (quoting *Old Chief*, 519 U.S. at 180). "Where the evidence is of very slight (if any) probative value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury." *Id.* (quotation and citation omitted). A fair trial cannot be dependent on a "guilty anyway" assessment of the evidence or the joinder of charges.

The graphic testimony about uncharged conduct was highly prejudicial. Because it described sexual physical contact between the victim and McLeod, it differed in kind from the texting, photo, and video evidence otherwise presented. As to the production charges, then, the testimony was evidence "lur[ing] the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief*, 519 U.S. at 180. Finally, while the testimony itself occupied little trial time, it required significant rebuttal—seven witnesses, including three flight attendants, two passengers, an FBI agent, and a forensic biologist. Had the counts been tried separately, the defendant may have prevailed in his defense. Tried together, the defense to the touching was rendered meaningless by virtue of the nature of the crimes and the reality of propensity proof.

The district court erred by admitting the touching testimony because it was not probative of the production counts and presented an unacceptably high risk of prejudice. Reversal for a new trial on this ground is appropriate.

3. The district court's failure to sever the travel and transportation counts from the production counts after it decided to admit the touching testimony abridged McLeod's right to a fair trial. *United States v. Lewis*, 787 F.2d 1318, 1321 (9th Cir. 1986), *amended on denial of reh'g*, 798 F.2d 1250 (9th Cir. 1986).

First, while McLeod failed to renew his motion to sever, he briefed and

8

argued it pretrial and also argued the touching testimony warranted severance in his motion for a new trial. Further, severance was inextricably bound up in the admission of the touching testimony, so much so that the district court's decision not to sever was premised on its conclusion that the touching testimony was relevant to the production counts. Because severance had been thoroughly litigated, renewal would have been an "unnecessary formality," *United States v. Vasques-Velasco*, 15 F.3d 833, 845 (9th Cir. 1994), and McLeod did not waive the issue.

The question here "is whether joinder was so prejudicial that the trial judge was compelled to exercise his discretion to sever." *Lewis*, 787 F.2d at 1321. "There is a high risk of undue prejudice whenever . . . joinder of counts allows evidence of other crimes to be introduced in a trial of charges with respect to which the evidence would otherwise be inadmissible." *Id.* (citation omitted) (alteration in original). McLeod "has the burden of proving that the joint trial was manifestly prejudicial," meaning that his "right to a fair trial was abridged." *Id.* (citations omitted). In my view he has satisfied that burden.

The district court concluded the touching testimony was relevant to the production counts because it rebutted what the court presumed was McLeod's affirmative defense—that he did not know the victims were underage. But the testimony does not go to any element of the production charges, and allowing the

9

government to introduce that evidence in its case in chief put the cart before the horse. Whether McLeod touched the victim after the two exchanged photos and video does not make it more likely that he knew how old the victim was *during* those exchanges. The problem here was that the testimony was not probative of the production counts but in the jury's mind was more than likely evidence of bad character. *See id.* at 1322. Such prejudice would have been at its peak regarding the production count concerning the other victim.

Nor were the district court's instructions to the jury that it could consider evidence of other uncharged acts "only for its bearing, if any, on the question of the defendant's intent and for no other purpose," and that it could not "consider [such] evidence as evidence of guilt of the crimes for which the defendant is now on trial" sufficient to cure the prejudice. This Court has expressed skepticism that "general instructions" can "ameliorat[e] the prejudice arising from joinder." *Bean v. Calderon*, 163 F.3d 1073, 1084 (9th Cir. 1998); *see also Lewis*, 787 F.2d at 1323 ("To tell a jury to ignore the defendant's prior convictions in determining whether he or she committed the offense being tried is to ask human beings to act with a measure of dispassion and exactitude well beyond mortal capacities." (quoting *United States v. Daniels*, 770 F.2d 1111, 1118 (D.C. Cir. 1985)).

In my opinion, the district court abused its discretion by refusing to sever the production counts from the travel and transport counts once it decided to admit the

touching evidence. Reversal and a new trial with the counts severed is appropriate here.

4. McLeod argues that because he did not meet the victims face-to-face before they sent him the pictures and videos—and so could not ascertain that they were minors—his due process rights were violated when he was convicted under 18 U.S.C. § 2251(a) without requiring proof that he knew the victims were underage. I agree with the majority that McLeod's challenge to the constitutionality of 18 U.S.C. § 2251 is foreclosed by *United States v. U.S. Dist. Court for Cent. Dists. of Cal., L.A. ("Kantor")*, 858 F.2d 534 (9th Cir. 1988). However, McLeod's argument that *Kantor*'s rationale is inapplicable to the facts of his case is not without some merit.

The defendants in *Kantor* were charged under § 2251 after they produced a sexually explicit film with a sixteen-year-old performer. *Id.* at 536. They sought to present as a defense evidence that the performer misled them by "pass[ing] herself off as an adult," and argued their First Amendment and due process rights required the government to prove they knew she was a minor. *Id.* A panel of this Court considered the legislative history of § 2251(a), noting that the omission of a *mens rea* requirement "was quite clearly deliberate." *Id.* at 538. Nevertheless, *Kantor* concluded that because § 2251 regulates speech, and "the first amendment [sic] does not permit the imposition of criminal sanctions on the basis of strict

11

liability where doing so would seriously chill protected speech . . . . imposition of major criminal sanctions on the[] defendants without allowing them to interpose a reasonable mistake of age defense would choke off protected speech." *Id.* at 540–41. Accordingly, *Kantor* held that, as to *mens rea*, "[a] defendant may avoid conviction only by showing, by clear and convincing evidence, that he did not know, and could not reasonably have learned, that the actor or actress was under 18 years of age." *Id.* at 543 (footnotes omitted). *Kantor* did not reach the defendants' due process claim. *Id.* at 538.

The Supreme Court, considering 18 U.S.C. § 2252, a related statute which prohibits distributions of child pornography, addressed whether the statute required that a defendant know that the person in the images distributed was a minor. *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994). In its analysis, the Supreme Court contrasted the legislative history of § 2252 with that of § 2251, noting that Congress intentionally omitted "knowingly" from § 2251 but not from § 2252. *Id.* at 76. And in a footnote, it noted that "[t]he difference in congressional intent with respect to § 2251 versus § 2252 reflects the reality that producers are more conveniently able to ascertain the age of performers," and cited to *Kantor* for the proposition that "[i]t thus makes sense to impose the risk of error on producers." *Id.* at 76 n.5.

12

McLeod argues *Kantor*'s "rationale is inapplicable to [his] case, which involves indirect communications over the internet—a forum known to be rife with inaccurate information." In other words, McLeod argues the facts of his case make him more akin to a distributor than to a producer. McLeod is correct that Congress could not have envisioned the circumstances of his case when it enacted § 2251, and also correctly notes that the "producer" rationale underlying *Kantor* and *X-Citement Video* seems to contemplate face-to-face meeting between the defendant and the minor. The technology innovation since *Kantor* was decided raises a serious question as to the factual predicate to its reasoning. That technology did not exist when Congress enacted § 2251, nor was it available when *Kantor* was decided. When the law was enacted, and when *Kantor* was decided, a producer, almost of necessity, had to encounter the minor to produce the illicit film or image. That is no longer the case, which gives rise to the need to revisit the question of whether the government should be put to the task of proving the defendant knew the victim was underage. *Kantor*'s precedent is binding here, as the majority found, but the issue is worth reconsideration by an *en banc* panel of this Court.

Because the district court erred by admitting Jackson's expert testimony and the Cellebrite report without making a reliability finding, by admitting the touching testimony, and by failing to sever the production counts from the travel and transport counts, I respectfully dissent in part, and I would send this case back for

13

new trials on the severed counts with instructions to the district court to reconsider its evidentiary rulings.