**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, v. JASON JAYAVARMAN, *Defendant-Appellant.* | No. 16-30082 D.C. No. 3:13-cr-00097-SLG OPINION |

Appeal from the United States District Court
for the District of Alaska
Sharon L. Gleason, District Judge, Presiding

Argued and Submitted August 16, 2017
Anchorage, Alaska

Filed September 26, 2017

Before: Susan P. Graber, Richard R. Clifton,
and Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Clifton

## SUMMARY[*]

### Criminal Law

The panel affirmed a conviction for attempt to produce and transport into the United States a visual depiction of a minor engaged in sexually explicit conduct in violation of 18 U.S.C. § 2251(e) (Count 1B), vacated a conviction for attempt to aid and abet travel with intent to engage in illicit sexual conduct in violation of 18 U.S.C. § 2243(b) (Count 2B), vacated the sentence as to both counts, and remanded for resentencing.

The panel accepted the government's concession that the conviction as to Count 2B must be vacated because § 2423 does not cover attempted aiding and abetting.

The panel held that a defendant may be convicted of an attempt to produce and transport a visual depiction of a minor engaged in sexually explicit conduct when he believes that the victim is a minor, regardless of the victim's actual age.

The panel rejected the defendant's contentions (1) that the Constitution's Foreign Commerce Clause does not authorize Congress to prohibit transportation of a sexually explicit visual depiction pursuant to 18 U.S.C. § 2251(c) if the depiction does not depict an actual minor; and (2) that prohibiting an attempt to make a sexually explicit video with a performer who the producer mistakenly believes to be a

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

minor would chill lawful speech in violation of the First Amendment.

The panel rejected the defendant's contention that the jury instruction as to Count 1B constituted a constructive amendment of the indictment.

Rejecting the defendant's sufficiency-of-the-evidence challenge, the panel held that a rational jury could have found that the government proved beyond a reasonable doubt that the defendant believed the victim was a minor at the time he made and transported the visual depictions.

Rejecting the defendant's challenge to the district court's grant of the government's motion in limine to admit audio recordings of the defendant's statements, the panel concluded that the district court did review the transcripts, and that even if the district court had not read every word, the error would have been harmless because the exhibits were clearly admissible under Fed. R. Evid. 403.

Rejecting the defendant's contention that the district court erred under the Court Interpreters Act, the panel held that the district court did not clearly err in determining that the defendant was sufficiently proficient in English that he did not require an interpreter.

In addition to vacating the defendant's conviction as to Count 2B, the panel vacated his sentence as to Count 1B and remanded for resentencing as to both counts because his sentence as to Count 1B was likely affected by his conviction as to Count 2B.

**COUNSEL**

A. Cristina Weidner-Tafs (argued) and Phillip Paul Weidner (argued), Weidner & Associates APC, Anchorage, Alaska, for Defendant-Appellant.

Ross Goldman (argued), Attorney; Sung-Hee Suh, Deputy Assistant Attorney General; Leslie R. Caldwell, Assistant Attorney General; Criminal Division, Appellate Section, United States Department of Justice, Washington, D.C.; Ravi Sinha, Assistant United States Attorney, United States Attorney's Office, Portland, Oregon; Audrey J. Renschen, Assistant United States Attorney; Karen L. Loeffler, United States Attorney; United States Attorney's Office, Anchorage, Alaska;  for Plaintiff-Appellee.

**OPINION**

CLIFTON, Circuit Judge:

It is a crime to produce outside the United States a visual depiction of a minor engaged in sexually explicit conduct and to then transport that visual depiction into the United States. 18 U.S.C. § 2251(c).  It is also a crime to attempt to produce and transport into the United States a visual depiction of a minor engaged in sexually explicit conduct.  18 U.S.C. § 2251(e).

In this case, we consider what happens when a defendant believes that the victim appearing in a depiction is a minor but the victim turns out to be an adult.  That defendant cannot be convicted of the completed version of the crime, but can he be convicted of attempt?  We answer that question in the

affirmative: a defendant attempts to produce and transport a visual depiction of a minor engaged in sexually explicit conduct when he believes that the victim is a minor, regardless of the victim's actual age.

This conclusion undermines a number of the grounds on which the defendant in this case challenges his conviction for attempted production and transportation of a visual depiction of a minor engaged in sexually explicit conduct. We reject the other grounds on which he challenges that conviction, and we affirm that conviction. As the government concedes we must, we vacate his conviction for attempting to aid and abet an undercover FBI agent's travel with intent to engage in illicit sexual conduct because the statute does not proscribe an attempt to aid and abet such travel. We vacate his sentences on both counts and remand for resentencing.

## I.  Background

Between 2010 and 2012, Defendant-Appellant Jason Jayavarman, who is a dual citizen of the United States and Cambodia, traveled repeatedly from his residence in Anchorage to Cambodia. While in Cambodia, Jayavarman had sexual relations with a female, referred to as "Ann" or "Ana." He made video recordings of the sexual relations and transported the recordings back to his residence in Anchorage.

It was disputed whether the victim was actually a minor and whether Jayavarman believed she was a minor at the time he made and transported the recordings. At trial, the jury heard audio recordings of Jayavarman stating that the victim was fourteen years old at the time he began having sexual relations with her and that he began making the video

recordings of their sexual relations either at that time or the next year. Documents of questionable provenance that purported to be the victim's birth certificate and national ID card, as well as an attestation, were also introduced into evidence. The documents asserted that the victim was born on a date that would have meant she was an adult at the time the recordings were made.

Jayavarman was tried in federal court for his conduct, and the jury was asked to consider two related subcounts. Count 1A asked the jury to determine whether Jayavarman had produced a visual depiction of a minor engaged in sexually explicit conduct while outside the United States and then transported the depiction into the United States in violation of 18 U.S.C. § 2251(c). Count 1B asked the jury to determine whether Jayavarman had attempted to perform the conduct described in Count 1A in violation of 18 U.S.C. § 2251(e), which criminalizes attempted violations of any of § 2251's subsections. The jury did not return a verdict on Count 1A, apparently not reaching a conclusion on the issue of whether the victim was actually a minor. The jury found Jayavarman guilty on Count 1B.

Jayavarman was tried for other alleged misconduct at the same time he was tried for the alleged violations of 18 U.S.C. § 2251 described above. Specifically, it was alleged that Jayavarman engaged in a number of telephone and in-person conversations in 2013 with an undercover FBI agent who pretended to be interested in traveling to Cambodia to have sexual relations with minors. Jayavarman made arrangements to travel to Cambodia and expressed an intent to meet the agent in Cambodia. Jayavarman was arrested before he left on the trip. It was disputed whether Jayavarman intended to have illicit sexual relations when he arrived in Cambodia and

how he intended to assist the FBI agent. The jury was asked to consider two related subcounts. Count 2A asked the jury whether Jayavarman had, while a United States citizen, attempted to travel to a foreign country with the intent to engage in illicit sexual conduct in violation of 18 U.S.C. §§ 2423(b) and (e). Count 2B asked the jury whether Jayavarman had attempted to aid and abet another person in performing the conduct described in Count 2A. The jury did not return a verdict on Count 2A and found Jayavarman guilty on Count 2B. As was true with Counts 1A and 1B, most of the evidence in support of the conviction consisted of recordings of Jayavarman's conversations with law enforcement officers.

After filing several post-trial motions, Jayavarman timely appealed his convictions on a number of grounds. In its answering brief on appeal, the government conceded that the conviction as to Count 2B must be vacated because the statute does not cover attempted aiding and abetting, the theory of the crime on which Jayavarman was convicted.[1] We accept

---

[1] The government concedes in reliance on our decision in *United States v. Kuok*, 671 F.3d 931, 941–42 (9th Cir. 2012), in which we vacated a conviction for attempting to cause the commission of a federal crime where the substantive statute did not contain a causation provision and the general causation statute did not contain an attempt provision. We explained that "there is no general federal 'attempt' statute. A defendant therefore can only be found guilty of an attempt to commit a federal offense if the statute defining the offense also expressly proscribes an attempt." *Id.* at 941 (some internal quotation marks and alteration notations omitted).

The jury convicted Jayavarman under Count 2B of attempting to aid and abet the undercover FBI agent's travel with intent to engage in illicit sexual conduct in violation of 18 U.S.C. § 2423(b). Section 2423(b) covers the substantive offense of traveling with intent to engage in illicit

the concession and vacate Jayavarman's conviction and sentence as to Count 2B.

## II. Discussion

Jayavarman challenges his conviction on a variety of theories, most of which relate to his contention that a jury must find that the victim was actually a minor, as opposed to finding that the defendant believed the victim was a minor, in order to convict a defendant of an attempted violation of 18 U.S.C. § 2251(c). He makes this argument as a matter of statutory construction, and he further contends that his conviction on the basis of his belief that the victim was a minor violated the Foreign Commerce Clause and the First Amendment and also constituted a constructive amendment of the indictment. Relatedly, he claims that there was insufficient evidence to prove that he believed the victim was a minor. Jayavarman also argues that the district court did not adequately review exhibits before admitting them over his challenges made pursuant to Federal Rule of Evidence 403. Finally, he contends that the district court erred in concluding that he did not need an interpreter, an issue that he did not raise until the trial was over. We are not persuaded by any of these challenges.

---

sexual conduct. Section 2423(e) prohibits attempting to violate § 2423(b), and 18 U.S.C. § 2(a) is a general provision prohibiting aiding and abetting the commission of a federal crime. The substantive statute does not contain an aiding and abetting provision, and the general aiding and abetting statute does not contain an attempt provision. The government reasons that, under *Kuok*, a defendant could be convicted of aiding and abetting an attempt to violate § 2423(b), but he cannot be convicted of attempting to aid and abet a violation of § 2423(b). The government notes that it disagrees with *Kuok* and states that it reserves the right to seek review of *Kuok*'s holding in the future.

*A. Statutory Construction*

Jayavarman argues that, as a matter of statutory construction, the jury had to find beyond a reasonable doubt that his victim was actually a minor in order to convict him of attempted production and transportation of a visual depiction of a minor engaged in sexually explicit conduct in violation of 18 U.S.C. §§ 2251(c) and (e). On this basis, he challenges the district court's jury instruction regarding the victim age element of the crime charged under Count 1B. He also claims that there was insufficient evidence for the jury to find that the victim was actually a minor and that he is therefore entitled to a judgment of acquittal. We conclude that a person may be convicted for attempting to commit the crime charged in Count 1B if he believed that the victim was a minor, even if the victim was not in fact a minor. On this attempt theory of the crime, the prosecution did not have to prove that the victim was actually a minor, and the district court correctly instructed the jury accordingly.

18 U.S.C. § 2251(c) provides:

> (1) Any person who, in a circumstance described in paragraph (2), employs, uses, persuades, induces, entices, or coerces any minor to engage in, or who has a minor assist any other person to engage in, any sexually explicit conduct outside of the United States, its territories or possessions, for the purpose of producing any visual depiction of such conduct, shall be punished as provided under subsection (e).

> (2) The circumstance referred to in paragraph (1) is that—

> > (A) the person intends such visual depiction to be transported to the United States, its territories or possessions, by any means, including by using any means or facility of interstate or foreign commerce or mail; or

> > (B) the person transports such visual depiction to the United States, its territories or possessions, by any means, including by using any means or facility of interstate or foreign commerce or mail.

18 U.S.C. § 2251(e) specifies punishments for "[a]ny individual who violates, or attempts or conspires to violate," § 2251.

With regard to Count 1B, the district court instructed the jury:

> In order for the defendant to be found guilty of Count One under this second theory, the government must prove . . . beyond a reasonable doubt [that] the defendant intended to employ, use, persuade, induce, entice, or coerce a minor to take part in sexually explicit conduct outside of the United States for the purpose of producing a visual depiction of such conduct, and transport such visual depiction to the United States by any means, including by using any means or facility of

interstate or foreign commerce . . . . [I]n order to convict the defendant of attempting to violate 18 U.S.C. § 2251(c) under this second theory, you do *not* need to find that "Ann/Ana" was under the age of eighteen years. Rather, the government must only prove that the defendant subjectively believed that "Ann/Ana" was under the age of eighteen years at the time. It is not a defense to this attempted crime that no minor was actually involved.

Jayavarman contends that this instruction was incorrect because, he says, even for an attempted violation of § 2251(c), the district court should have required the jury to find that the victim was actually a minor.

The parties agree that a defendant can properly be convicted of a completed violation of § 2251(c), as distinguished from an attempted violation of that statute, without a finding by the jury that the defendant actually knew or should have known that the victim was a minor. That is, they agree that a defendant can be guilty of the completed version of § 2251(c) even if he did not act with mens rea or a guilty state of mind (whether purposefully, knowingly, recklessly, or negligently) as to the victim's age. The text of the statute does not provide a state of mind requirement, and we have previously concluded that there is no state of mind requirement as to age in § 2251(a), a closely analogous provision.[2] *United States v. U.S. Dist. Court* ("*Kantor*"),

---

[2] We acknowledge, however, that § 2251(c) was added many years after § 2251(a). Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003, Pub. L. No. 108-21, 117 Stat.

858 F.2d 534, 538 (9th Cir. 1988). Typically we apply a "presumption in favor of a scienter requirement . . . to each of the statutory elements that criminalize otherwise innocent conduct," "even where the statute by its terms does not contain" a scienter requirement. *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 70–72 (1994). That presumption has not historically applied, however, to the element of a victim's age in a sex crime when the defendant personally confronts the victim. *Id.* at 72 n.2. Therefore, at least when the defendant personally confronts the victim, as happened in Jayavarman's case, there is no requirement that the defendant be aware that the victim was actually a minor for the completed crime under § 2251(c). The age of the victim is a strict liability element, meaning that there is no guilty state of mind or mens rea requirement. A defendant may invoke a reasonable mistake of age defense, *see Kantor*, 858 F.2d at 541, but there is no burden on the government to prove the defendant was actually aware that the victim was a minor.

The parties disagree, though, as to whether an attempted violation of § 2251(c) requires that the victim actually be a minor. When Jayavarman argued in a post-trial motion that proof of the victim's actual minority was required, the district court rejected his contention on the basis of our decision in *United States v. Meek*, 366 F.3d 705 (9th Cir. 2004). *Meek* dealt with a child prostitution statute, 18 U.S.C. § 2422(b), which included a state of mind requirement. Because that statute covered someone who "knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal

650.   Therefore, the legislative history arguments that we cited in interpreting § 2251(a) are not applicable to interpreting § 2251(c).

offense, or attempts to do so," it required the jury to conclude that the defendant knew the victim was a minor in order to support a conviction for the completed version of the crime. The defendant in *Meek* was charged with attempted violation of the statute based on his correspondence with someone who was not a minor, in particular an undercover adult police officer. We held that "[t]he fact that Meek was mistaken in his belief that he was corresponding with a minor does not mitigate or absolve his criminal culpability; the simple fact of Meek's belief is sufficient as to this element of a § 2422(b) violation." *Id.* at 720. The government contends that the same reasoning applies to Jayavarman's case. We agree.

The differences between the statute at issue in *Meek* and § 2251(c) do not justify departing from our reasoning in *Meek*. Section 2251(c) targets producers of sexually explicit visual depictions of minors. The Supreme Court has explained that Congress has subjected producers of child pornography to criminal liability regardless of their state of mind as to the age of their victims because "producers are more conveniently able to ascertain the age of performers" than are individuals who, for example, come into contact with depictions after the depictions have been produced. *X-Citement Video*, 513 U.S. at 76 n.5; *see also Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 255 (2002) ("Where the defendant is not the producer of the work, he may have no way of establishing the identity, or even the existence, of the actors."). In other words, for the completed versions of the crimes, Congress has intentionally elected to hold violators of § 2251(c) to a higher standard than violators of statutes like the one at issue in *Meek*, which require knowledge that the victim is a minor.

Jayavarman would have us reverse those relative burdens in the context of attempted violations of these statutes. That is, he would have us hold that belief of the victim's minority is sufficient for an attempt to violate the statute at issue in *Meek* but not for an attempt to violate § 2251(c). There is no principled reason to accept such a distinction, and we decline to do so. Just as in *Meek*, "[i]t would be contrary to the purpose of the statute to distinguish the defendant who attempts to induce an individual who turns out to be a minor from the defendant who, through dumb luck, mistakes an adult for a minor. To hold otherwise would bestow a windfall to one defendant when both are equally culpable." 366 F.3d at 718; *see also United States v. Williams*, 553 U.S. 285, 300 (2008) ("[I]mpossibility of completing the crime because the facts were not as the defendant believed is not a defense" to attempt.); *United States v. Johnson*, 376 F.3d 689, 693–94 (7th Cir. 2004) (concluding that belief of a performer's minority is sufficient to convict for an attempted violation of 18 U.S.C. § 2251(a)).

We therefore hold that a defendant may be convicted of an attempt to violate § 2251(c) if he believes that the victim is a minor, even if the victim turns out to be an adult.[3] The district court did not err in instructing the jury accordingly, and Jayavarman is not entitled to a judgment of acquittal on these grounds.

In a similar vein, Jayavarman contends that the district court should have given an instruction for a reasonable

---

[3] This case does not present, and we do not decide, the issue of whether a defendant may be convicted of an attempt to violate § 2251(c) if he believes that the victim is an adult but the victim turns out to be a minor.

mistake of age defense.  That defense is meant to protect a defendant who, after sufficiently diligent investigation, formed a reasonable belief that he was engaged in lawful activity with an adult but was mistaken and was actually engaged in unlawful activity with a minor.  *Kantor*, 858 F.2d at 540–41.  Under the attempt theory for Count 1B, however, Jayavarman was found guilty of the opposite, based on a finding that he believed the victim to be a minor.  The reasonable mistake of age defense did not apply to him.

## B.  *Foreign Commerce Clause*

Jayavarman cites the Foreign Commerce Clause of the Constitution as another ground for his challenge to the district court's conclusion that an attempt to violate § 2251(c) requires only a belief that the victim is a minor.  He asserts that the Foreign Commerce Clause does not authorize Congress to prohibit transportation of a sexually explicit visual depiction pursuant to § 2251(c) if the depiction does not depict an actual minor.  We reject this challenge.

The Foreign Commerce Clause grants Congress the power "[t]o regulate Commerce with foreign Nations."  U.S. Const. art. I, § 8, cl. 3.  Statutes adopted under the authority granted by the Foreign Commerce Clause must regulate conduct that has a sufficient "nexus with foreign commerce." *United States v. Clark*, 435 F.3d 1100, 1114 (9th Cir. 2006). When a defendant transports a visual depiction into the United States from a foreign country, the presence or absence of an actual minor in the visual depiction does not impact the strength of the conduct's nexus with foreign commerce. Regardless of what the depiction depicts, it is still being transported.  The theory of the crime articulated in the jury

instruction did not run afoul of the Foreign Commerce Clause.

## C.  First Amendment

Jayavarman also contends that prohibiting an attempt to make a sexually explicit video with a performer who the producer mistakenly believes to be a minor would chill lawful speech in violation of the First Amendment.  Specifically, Jayavarman argues that the government's theory would chill both speech by adults who appear young and who wish to perform in sexually explicit videos as well as speech by persons who wish to produce such videos with performers who seem to be adults but who might turn out to be minors. We reject this argument.

"There is no First Amendment exception from the general principle of criminal law that a person attempting to commit a crime need not be exonerated because he has a mistaken view of the facts."  *Williams*, 553 U.S. at 304.  The Supreme Court has explained that inchoate crimes relating to pornography that a defendant believes to depict a minor are not protected by the First Amendment just because it turns out that the pornography actually depicts an adult.  *Id.* at 300.

It is true that non-obscene sexually explicit material depicting only adults is protected speech, even if it may appear that the material depicts minors.  *Free Speech Coal.*, 535 U.S. at 244–56.  Such speech might be chilled when there is no guilty state of mind requirement as to the age element of a child pornography statute, which is why we have read such statutes to implicitly include reasonable mistake of age defenses.  *Kantor*, 858 F.2d at 541–42.  But "[t]he potential for unconstitutional chilling of legitimate speech disappears

[when a statute] requires the prosecution to prove that a defendant actually knows or believes that the [victim] is a minor." *Meek*, 366 F.3d at 721. That is what was required here: the jury found beyond a reasonable doubt "that the defendant subjectively believed that 'Ann/Ana' was under the age of eighteen years at the time." Jayavarman's conviction on these grounds did not violate the First Amendment.

## D. *Constructive Amendment*

Jayavarman argues that the jury instruction as to Count 1B constituted a constructive amendment of the indictment. This challenge also fails.

"An amendment of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed upon them." *United States v. Ward*, 747 F.3d 1184, 1189 (9th Cir. 2014) (emphasis omitted). Count 1 of the superseding indictment charged that Jayavarman:

> did, and did attempt to, employ, use, persuade, induce, entice, and coerce a minor child to engage in any sexually explicit conduct outside of the United States for the purpose of producing a visual depiction of such conduct and thereafter transported such visual depiction to the United States by any means, including by using any means or facility of interstate or foreign commerce.

Jayavarman contends that the jury instruction constructively amended the indictment in a number of ways.

Most of Jayavarman's arguments stem from his contention that, although the indictment charged him with attempting to violate § 2251(c)(2)(B), the jury instruction instead related to conduct covered by § 2251(c)(2)(A). These two subparagraphs are the two alternative means by which the statute asserts federal jurisdiction. Section 2251(c)(2)(A) applies when a defendant "intends such visual depiction to be transported to the United States," whereas § 2251(c)(2)(B) applies when a defendant "transports such visual depiction to the United States."  In the attempt context, the two subparagraphs cover overlapping conduct: it is possible for a person to intend that a depiction be transported (by any person) and to also intend to transport that depiction (personally).  Thus, Jayavarman's arguments that the jury instruction described conduct covered by subparagraph (A) are red herrings.  That conduct was covered by subparagraph (A) did not mean that it was not also covered by subparagraph (B).  Jayavarman was convicted of attempting to violate subparagraph (B), the subparagraph under which he was indicted, because the jury found that he intended to transport a depiction and he believed that the depiction depicted a minor engaging in sexually explicit conduct.

Two of Jayavarman's constructive amendment arguments have slightly more substance, but they too fail.  First, he correctly points out that the indictment alleged he "transported" a depiction, whereas the jury instruction asked the jury whether he "intended to . . . transport" a depiction. While these terms cover some of the same conduct, they do not mean the same thing.  A hypothetical defendant could have been convicted under the jury instruction (for attempted transport) even if he did not perform the conduct described in the indictment (actual transport).  But Jayavarman did not object to the jury instruction, so it is reviewed for plain error.

*Ward*, 747 F.3d at 1188. As the district court explained, "there was no dispute at trial that a visual depiction of Ana had been transported into the United States—the evidence was overwhelming and uncontroverted in that regard." Thus Jayavarman was not prejudiced by the discrepancy. *See United States v. Hartz*, 458 F.3d 1011, 1022–23 (9th Cir. 2006).

Jayavarman also argues that there was a constructive amendment of the indictment because, under one reading of the jury instruction, a jury could have convicted if it determined that the defendant initially made a sexually explicit video involving a person he then thought to be a minor, subsequently learned that the person depicted was in fact an adult, and only then formed the intention to transport the depiction to the United States. The reading of the instruction that Jayavarman suggests strikes us as unnatural, especially because the instruction's requirement "that the defendant subjectively believed that 'Ann/Ana' was under the age of eighteen years at the time" would seem to apply equally to "the time" when the depictions were made as to "the time" when they were transported. At any rate, the conversations that established Jayavarman's belief as to the victim's age occurred after he had already transported the depictions to the United States. Those conversations demonstrated that, at the time of the conversations, he still believed she had been a minor at the time the depictions were made. Accordingly, there was no evidence that would have supported a finding that Jayavarman decided to transport the depictions only after learning that the victim was an adult. He therefore was not prejudiced by any imprecision in the instruction.

*E. Sufficiency of the Evidence*

Jayavarman contends that there was insufficient evidence to prove that he believed the victim was a minor at the time he made and transported the videos. "Evidence is sufficient to support the conviction if, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Sheldon*, 755 F.3d 1047, 1051 (9th Cir. 2014) (internal quotation marks omitted). We conclude that a rational jury could have found that the evidence the government adduced proved beyond a reasonable doubt that Jayavarman believed the victim was a minor.

The evidence supporting the government's contentions regarding Jayavarman's beliefs as to the victim's age came from audio recordings that were played in court. The jury heard recordings of both a telephone call and an in-person conversation between Jayavarman and an undercover FBI agent, both of which occurred before Jayavarman knew he was under suspicion. In the recordings, Jayavarman affirmed that he had made video recordings of himself having sexual relations with a fourteen-year-old girl beginning in 2010. Jayavarman also described to the agent a strategy for hiding from customs officers memory cards containing video recordings. When law enforcement officers subsequently searched Jayavarman's residence, they found a number of memory cards containing videos depicting Jayavarman engaged in sexual contact with the victim. The videos were recorded between 2010 and 2012.

After his arrest, Jayavarman made additional statements about the victim's age. The jury heard recordings of a

conversation between Jayavarman and an Anchorage Police Department officer and a conversation between Jayavarman and another FBI agent. In those recordings, Jayavarman stated that the victim was fourteen years old when he met her and first had sex with her in 2009. He also affirmed that he possessed a video depicting himself and the victim engaged in sexual relations from when the victim was fourteen years old. Furthermore, the government presented evidence that, after his arrest, Jayavarman used dubious means to obtain unreliable documents in an attempt to demonstrate that the victim was an adult at the time the videos were made, thus suggesting that Jayavarman was aware of his guilt. *See United States v. Renzi*, 769 F.3d 731, 758 (9th Cir. 2014) (considering evidence of "consciousness of guilt" in evaluating a sufficiency of the evidence challenge).

Jayavarman argues that his claimed belief that the victim was eighteen at the time he made his first sexually explicit video depiction of her was supported by the "fact" that she was born in 1992 and was therefore eighteen in 2010. The evidence suggesting that the victim was actually an adult, however, was not so compelling that a rational jury would be required to reach that conclusion. Moreover, the jury could have concluded that Jayavarman thought that the victim was underage even if, in fact, she was not. We need not determine why the jury did not credit the evidence offered by Jayavarman. It is enough for us to conclude that the findings essential to support the verdict could have been made by a rational jury based on all the evidence, and that conclusion is an easy one for us to reach here.

Jayavarman cites a number of cases in which the evidence of the defendant's belief regarding the intended victim's age was stronger than it was in this case. But the issue on appeal

is not whether the evidence presented at trial constituted the strongest possible evidence of guilt. Rather, it is whether a reasonable jury could have made the factual findings needed to support a guilty verdict. *Renzi*, 769 F.3d at 758. The government adduced sufficient evidence to permit a reasonable jury to conclude beyond a reasonable doubt that Jayavarman believed the victim was a minor at the time he made and transported the visual depictions.

## F. *Federal Rule of Evidence 403*

Next, Jayavarman challenges the district court's grant of the government's motion in limine to admit audio recordings of Jayavarman's statements that he had sex with the victim in 2009 when she was thirteen or fourteen years old, before he began making the recordings that were the subjects of the prosecution. In the district court, Jayavarman challenged the admission of this evidence under Federal Rules of Evidence 402, 403, and 404. On appeal, Jayavarman concentrates on Rule 403, contending narrowly that the district court erred by not reading every word of the transcripts of the recordings that the government sought to admit before approving their admission and also arguing generally that the statements admitted were only marginally relevant and were unduly prejudicial.

Rule 403 states: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Typically a district court's admission of evidence, including its Rule 403 balancing, is reviewed for abuse of discretion.

*United States v. Hardrick*, 766 F.3d 1051, 1055 (9th Cir. 2014).

In *United States v. Curtin*, 489 F.3d 935, 957 (9th Cir. 2007) (en banc), however, we held that, in the context of reviewing "abhorrent [exhibits], . . . a district court making a Rule 403 decision must know precisely what is in the [exhibits] in order for its weighing discretion to be properly exercised and entitled to deference on appeal." The district court in that case had not read certain pornographic stories possessed by the defendant in their entirety before admitting them, and we concluded that, had the district court read the stories, it would have identified a particularly disgusting passage and "required that it be edited out of the exhibit as both irrelevant and dangerously prejudicial." *Id.* We further stated that "[o]ne cannot evaluate in a Rule 403 context what one has not seen or read. Here, given the depraved and patently prejudicial nature of the irrelevant evidence . . . that the court overlooked, we are unable to conclude—as the government would have us do—that this error was harmless." *Id.* at 958. The requirement to "read every word" of an exhibit as part of the Rule 403 balancing was subsequently expanded to all Rule 403 inquires into exhibits, not just exhibits involving particularly inflammatory content as was at issue in *Curtin*. *United States v. McElmurry*, 776 F.3d 1061, 1070 (9th Cir. 2015).

*Curtin* and our subsequent decisions leave unclear how confident the court of appeals must be that the district court did not read every word of an exhibit before we will conclude that the district court erred in its Rule 403 analysis. In *Curtin* as well as the two published decisions holding that a district court erred pursuant to *Curtin*, the government conceded that the district court had not reviewed the evidence completely,

so it was not necessary to consider how to evaluate cases closer to the margin. *McElmurry*, 776 F.3d at 1070; *United States v. Waters*, 627 F.3d 345, 356 n.4 (9th Cir. 2010); *Curtin*, 489 F.3d at 956.

In Jayavarman's case, the district court did not explicitly state that it had reviewed the relevant transcripts. A district court, however, need not necessarily declare that it has "read every word" of an exhibit as if *Curtin*'s command were a magical incantation. While it is not clear exactly which exhibits the government provided to the district court, the district court did have in its possession transcripts of Jayavarman's conversations that seem likely to have included the disputed exhibits. Additionally, the district court was aware of the requirement to read every word of disputed evidence as part of its Rule 403 analysis. Citing *Curtin*, the district court specifically stated that it did read every word of other exhibits that were subjects of the motion in limine, and it discussed the *Curtin* requirement with counsel on the record on the same day that it ruled on the exhibits that are the subjects of this dispute. *Cf. McElmurry*, 776 F.3d at 1069 (concluding the district court was unaware of its obligations because, "unfortunately, counsel did not cite or otherwise alert the district court to *Curtin*"). Because the district court was aware of its obligation to review the transcripts, and because it appears that the district court was given the transcripts to review, we conclude that the district court did review the transcripts and that there was no error.

Even if the district court had not reviewed every word of the transcripts, the error would have been harmless because the exhibits were clearly admissible under Rule 403. *Cf. Waters*, 627 F.3d at 354–56 (concluding that exhibits of which district court did not read every word would not have

been admitted if they had been reviewed more thoroughly); *Curtin*, 489 F.3d at 958 (same). The evidence was critical for demonstrating Jayavarman's belief about the victim's age because, if he thought the victim was thirteen or fourteen years old in 2009, then he would also have thought she was a minor in 2010 to 2012 when he made the visual depictions that were the subjects of the prosecution. Accordingly, the probative value of the evidence was very high. That value was not substantially outweighed by any risk of unfair prejudice that might have arisen from the evidence, especially in the context of other evidence adduced at trial. There was no error under Rule 403.

## G. *Need for an Interpreter*

Jayavarman, whose first language is Khmer, contends that the district court erred under the Court Interpreters Act, 28 U.S.C. § 1827, by not providing him with an interpreter. Jayavarman did not provide any indication that he was having difficulty participating in the proceedings until after the trial was over. We conclude that the district court did not clearly err in determining that Jayavarman was sufficiently proficient in English that he did not require an interpreter.

The Court Interpreters Act requires courts to:

> utilize the services of . . . an . . . interpreter, in judicial proceedings instituted by the United States, if the presiding judicial officer determines . . . that [a] party . . . speaks only or primarily a language other than the English language . . . so as to inhibit such party's comprehension of the proceedings or

communication with counsel or the presiding
judicial officer.

28 U.S.C. § 1827(d)(1). "When a court becomes aware of a
criminal defendant's potential difficulties in understanding or
speaking the English language, it has a mandatory duty to
make a determination on the record whether an interpreter is
required, and if so, to appoint a certified individual." *United
States v. Murguia-Rodriguez*, 815 F.3d 566, 570 (9th Cir.
2016). When a defendant challenges a district court's factual
finding that he does not need an interpreter, the decision is
reviewed for "clear error." *Id.*; *Gonzalez v. United States*,
33 F.3d 1047, 1050 (9th Cir. 1994).

Jayavarman contends that he was discouraged from
testifying in violation of the Fifth Amendment because, when
he engaged in a colloquy with the district court regarding his
right to testify, he misinterpreted a statement that the district
court made and, as a result, incorrectly believed that the court
told him his testimony would not make a difference. He
argues that an interpreter would have helped avert that
misunderstanding. He also contends that, because he did not
have an interpreter, he did not fully understand his attorney,
he could not fully assist in his defense, he did not understand
witnesses' testimony, and he was dissuaded from testifying
because he thought the jury would not understand him.

As an initial matter, it is noteworthy that Jayavarman did
not raise his alleged language issues at all until after the trial
was over. The district court stated that it had no indication
that Jayavarman was having language difficulties prior to or
during the trial. As we have previously explained, "[t]o allow
a defendant to remain silent throughout the trial and then . . .
assert a claim of inadequate translation would be an open

invitation to abuse." *United States v. Si*, 333 F.3d 1041, 1044 (9th Cir. 2003) (order) (omission in original). Jayavarman's failure to raise his concerns promptly to the district court counsels against granting relief here.

With regard to Jayavarman's right to testify, it appears unlikely that he was influenced by any misunderstanding of the colloquy because, as the district court noted, he unequivocally stated, "I choose not to testify," immediately *before* the district court made the statement that he claims to have misunderstood. Furthermore, he did not suggest that he was having trouble understanding the district court when it spoke to him about his right to testify.[4]

With regard to his more general allegations about the consequences of the claimed language barrier, the district court provided a number of reasons to support its conclusion that the record clearly established that "Mr. Jayavarman does not primarily speak a language other than the English language, and even if he did, his English language skills are not so deficient as to inhibit his comprehension of the proceedings." Specifically, the court found that Jayavarman's recorded conversations that were played during trial revealed that he was good at understanding and speaking English. The court found that its assessment was supported by the fact that Jayavarman had moved to the United States when he was nineteen years old and had lived here for the

---

[4] Jayavarman's assertion that his counsel advised him not to testify because the jury would have trouble understanding him and his assertion that his counsel did not discuss with him the possibility of having an interpreter would have to be raised as part of a Sixth Amendment ineffective assistance of counsel claim. *See Strickland v. Washington*, 466 U.S. 668 (1984).

following twenty-seven years, that he had long operated a youth hostel in Anchorage that required communication with customers in English, and that he had communicated extensively in English with one of his friends. The district court's finding that Jayavarman spoke and understood English well enough that he did not require an interpreter in order to sufficiently comprehend the proceedings was well supported and was not clearly erroneous.

## H. *Remand for Resentencing*

In addition to vacating Jayavarman's conviction and sentence as to Count 2B, we also vacate his sentence as to Count 1B and remand for resentencing because Jayavarman's sentence as to Count 1B was likely affected by his conviction as to Count 2B.

The district court sentenced Jayavarman to concurrent terms of 216 months for each of the two counts for which he was convicted (followed by a lifetime term of supervised release) and fined him $50,000 ($25,000 on each count). "[W]hen a district court imposes multiple sentences on a defendant, the degree to which each offense contributes to the total sentence is usually affected by the other offenses of conviction. Thus, remand of all sentences is often warranted," even when only one conviction is vacated. *United States v. Evans-Martinez*, 611 F.3d 635, 645 (9th Cir. 2010) (citation and internal quotation marks omitted); *see also United States v. Rodriguez*, 790 F.3d 951, 954 (9th Cir. 2015) ("Because the district court . . . premised the sentence for the [conviction of violating one statute], in part, on the fact that [the defendant] had also been convicted of violating [another statute, the conviction for which was reversed], we

also remand for resentencing on the [conviction that was affirmed].").

   Though the district court formally imposed a separate sentence for each of Jayavarman's two counts of conviction, it appears that it viewed the total length of imprisonment as a package for both convictions.  At sentencing, Jayavarman argued that he should not be given the same sentence for each count.   When the district court solicited the probation officer's view, the probation officer said: "Well Your Honor, I mean, I look at the cases, you know, in their totality, and typically, I don't separate out each count and do it that way." The district court then stated: "I did consider both of the offenses together in imposing the sentence. . . . I did do the sentencing rather holistically in reaching that figure, and I will maintain that as concurrent on the 216."  The district court also said: "I was viewing the two crimes jointly as the basis for the Court's finding."  Accordingly, we vacate both of Jayavarman's sentences even though we vacate only one of his convictions.[5]

---

   [5] Jayavarman's argument based on the Double Jeopardy Clause that he cannot be retried on Counts 1A or 2A is without merit.  *See* U.S. Const. amend. V.  The jury hung on Counts 1A and 2A and did not acquit Jayavarman of anything.  Thus, retrying Counts 1A and 2A would not involve "relitigating any issue that was necessarily decided by a jury's acquittal in a prior trial."  *Yeager v. United States*, 557 U.S. 110, 119 (2009).  Additionally, the district court did not rule on Jayavarman's motion for a judgment of acquittal as to Count 2A because there was no conviction on that count.  The government stated at oral argument that, if we affirmed the conviction on Count 1B, nothing with regard to Count 2A would matter, implying that the government did not intend to retry Jayavarman on Count 2A.  We leave it to the district court to address Jayavarman's motion for a judgment of acquittal as to Count 2A in the first instance should the government elect to proceed on that count.

### III.    Conclusion

We affirm Jayavarman's conviction as to Count 1B for attempt to produce and transport a sexually explicit visual depiction of a minor.  We vacate Jayavarman's conviction as to Count 2B for attempt to aid and abet travel with intent to engage in illicit sexual conduct.  We vacate his sentence as to both counts and remand for resentencing.

**AFFIRMED IN PART; VACATED IN PART; REMANDED.**