**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | No. 18-10416 |
| v. | D.C. No. 3:16-cr-08202-ROS-1 |
| SARAH MELISA COX, AKA Sarah Cox, AKA Sarah Cunningham, *Defendant-Appellant*. | OPINION |

Appeal from the United States District Court
for the District of Arizona
Roslyn O. Silver, District Judge, Presiding

Argued and Submitted May 11, 2020
San Francisco, California

Filed June 26, 2020

Before: Ryan D. Nelson and Daniel A. Bress, Circuit
Judges, and James S. Gwin,[*] District Judge.

Opinion by Judge Gwin

---

[*] The Honorable James S. Gwin, United States District Judge for the
Northern District of Ohio, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel affirmed convictions on child pornography-related charges, including one count of making a notice offering child pornography in violation of 18 U.S.C. § 2251(d)(1)(A).

The panel held that one-to-one communications can satisfy the "notice" requirement in § 2251(d)(1), and that a rational fact-finder could find that the defendant made a notice offering child pornography when she sent a one-to-one electronic message linking to a Dropbox account that contained child pornography. The panel also held that the district court did not abuse its discretion when it admitted under Fed. R. Evid. 404(b) an uncharged Kik messenger exchange to prove the defendant's identity and absence of mistake.

### COUNSEL

David Eisenberg (argued), Phoenix, Arizona, for Defendant-Appellant.

Krissa M. Lanham (argued), Deputy Appellate Chief; Robert I. Brooks, Assistant United States Attorney; Michael Bailey, United States Attorney; United States Attorney's Office, Phoenix, Arizona; for Plaintiff-Appellee.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

GWIN, District Judge:

Sarah Cox used an online instant messaging platform to exchange child pornography with one other individual. A jury convicted Cox of five child pornography-related charges, including one count of making a notice offering child pornography in violation of 18 U.S.C. § 2251(d)(1)(A).

With this appeal, Cox argues that a one-to-one communication cannot support a conviction for "mak[ing] . . . [a] notice . . . offering" child pornography under § 2251(d)(1)(A). Cox also argues that the district court erred when it admitted evidence of uncharged conduct.

We disagree with Cox's reading of the statute, and we conclude that the district court did not err in admitting the uncharged conduct evidence. We affirm.

## I.  BACKGROUND

### A.  Case Overview

In late August 2015, Richard Hennis and a person using the moniker "JadeJeckel" communicated on Kik Messenger[1] and discussed child pornography and child sex. In later November 2015 to January 2016 Kik messages, JadeJeckel and Hennis exchanged child pornography. At trial, the Government argued that Defendant Sarah Cox used the JadeJeckel messaging account. Cox denied that she sent or

---

[1] Kik Messenger is an instant messaging application available for smartphones and tablets. It functions similarly to a standard text messaging service.

received the messages.  The jury convicted Cox on all counts.

Although the indictment only alleged criminal conduct in December 2015, the Government offered the August 2015 Kik conversation to prove that Defendant Cox used the JadeJeckel account.  Appellant Cox says this was prejudicial error.

Cox also argues on appeal that insufficient evidence supported her conviction of making a notice offering child pornography when the notice was in a person-to-person text message.  She claims the statute could only be violated through a wider distributed notice.

## B.  The Kik Messenger Conversation

On August 24, 2015, Richard Hennis started a Kik Messenger conversation with user "JadeJeckel."  The Government later claimed Sarah Cox was the JadeJeckel user.

A few hours into the August 2015 Kik exchange, Defendant Cox steered the conversation to child sex.  In this text exchange, Defendant Cox and Hennis discussed child sex, whether to murder a mother to take her child, and their desire to kidnap, enslave, and rape children.  After several days of these August 2015 messages, Cox ended the conversation.

On November 22, 2015, Defendant Cox and Hennis reinitiated their Kik conversation.  Cox and Hennis quickly resumed discussing their child sexual interest. Minutes after reconnecting in November 2015, Cox asked Hennis to send her his "nastiest favorite" "naughty" videos.  In response, Hennis sent Cox eleven separate child pornography files.

For the next several weeks, Defendant Cox and Hennis continued to discuss their child sexual interest.  Central to the charge for making a notice offering child pornography, on December 4, 2015, Defendant Cox used Kik to send Hennis two separate Dropbox links, calling them "[g]oodies for daddy."  One of the Dropbox accounts contained child pornography videos.  On December 23, 2015, Hennis sent Cox three child pornography images.  Hennis and Cox ended their text conversation on January 18, 2016.

## C.  Investigation and Arrest

In early 2016, law enforcement received a tip that Richard Hennis had child pornography on his phone.  Law enforcement arrested Hennis, seized his phone, and extracted the Hennis-Cox Kik Messenger conversations described above.  Investigation into the JadeJeckel identity showed substantial evidence linking Sarah Cox to the JadeJeckel account, including IP addresses, an email from jadejeckel@live.com containing Cox's resume; Cox's driver's license listing the same birthday as JadeJeckel; non-public photographs of Cox sent by JadeJeckel; and Cox's social media accounts using the JadeJeckel moniker.

The Government arrested Cox and charged her with five counts arising out of her Kik Messenger conversation with Hennis: three counts of receiving child pornography,[2] one count of making a notice offering child pornography,[3] and one count of distributing child pornography.[4]

---

[2] 18 U.S.C. §§ 2252A(a)(2)(A), 2252A(b), 2256.

[3] 18 U.S.C. §§ 2251(d)(1)(A), 2256.

[4] 18 U.S.C. §§ 2252A(a)(2)(A), 2252A(b), 2256.

## D.  Trial and Appeal

The case went to trial.  The Government presented substantial evidence that Sarah Cox was the JadeJeckel Kik user.  Cox did not contest that JadeJeckel transmitted and received child pornography.  Instead, Cox argued that she was not JadeJeckel.  Cox called one witness, a computer forensics expert, who testified that hackers can frame people by creating fake internet profiles.  The expert witness also testified that Cox's surrendered electronic devices did not have Kik conversation evidence.  The jury convicted Sarah Cox on all counts.

On October 24, 2018, Cox appealed.  On appeal, Cox concedes that the Government showed sufficient evidence that she was JadeJeckel.  Instead she argues that the evidence was insufficient to support a conviction for making a notice offering child pornography and that the district court erred in admitting certain evidence warranting a new trial.

## II.  DISCUSSION

## A.  One-to-One Communications Can Satisfy the 18 U.S.C. § 2251(d)(1) "Notice" Requirement, and Sufficient Evidence Supported Cox's § 2251(d)(1) Conviction.

Cox challenges her conviction for violating 18 U.S.C. § 2251(d)(1)(A), that provides:

> **(d)(1)** Any person who . . . knowingly makes, prints, or publishes, or causes to be made, printed, or published, any notice or advertisement seeking or offering—

> **(A)** to receive, exchange, buy, produce, display, distribute, or reproduce, any visual depiction, if the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct and such visual depiction is of such conduct[]
>
> **. . .**
>
> shall be punished as provided under subsection (e).[5]

To prove this violation, the Government presented evidence that Cox sent Hennis a Kik message with a link to a Dropbox account that contained child pornography. Cox's message with the link said, "[g]oodies for daddy."

On appeal, Cox argues that a one-to-one communication cannot be a "notice or advertisement" of child pornography under 18 U.S.C. § 2251(d)(1). She argues that the statute requires "something more than a one-on-one exchange." Because her communication ran only to Hennis, she argues there was insufficient evidence for her § 2251(d)(1) conviction.

"We review challenges to the sufficiency of evidence, including questions of statutory interpretation, de novo."[6] "There is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the

---

[5] 18 U.S.C. § 2251(d)(1)(A).

[6] *United States v. Aldana*, 878 F.3d 877, 880 (9th Cir. 2017).

prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[7]

As a preliminary matter, we agree with the Government that we only need consider whether the trial evidence supports a conviction under the statute's "notice" prong. If the Government proves the "notice" prong, the Government does not need to prove the "advertisement" prong.

Section 2251(d)(1) is disjunctive (*i.e.*, the statute prohibits "notice *or* advertisement").[8]  The Government prosecuted Cox under the "notice" prong. Therefore, we consider only whether any rational juror could find that evidence of a one-to-one communication could be a "notice" under 18 U.S.C. § 2251(d)(1).

### 1.  Statutory Construction

Before we consider the sufficiency of the evidence, we first examine the statute. Whether 18 U.S.C. § 2251(d)(1)'s "notice" provision applies to one-to-one messages is an issue of first impression in this circuit.

In statutory interpretation, "our starting point is the plain language of the statute."[9]  "[W]e examine not only the specific provision at issue, but also the structure of the

---

[7] *Id.* (quoting *United States v. Roach*, 792 F.3d 1142, 1144 (9th Cir. 2015)).

[8] 18 U.S.C. § 2251(d)(1) (emphasis added).

[9] *United States v. Williams*, 659 F.3d 1223, 1225 (9th Cir. 2011).

statute as a whole, including its object and policy."**10**  "If the plain meaning of the statute is unambiguous, that meaning is controlling . . . ."**11**

We first look to the key word in our review: "notice."**12** The statute does not define notice, so we construe the word pursuant to its ordinary meaning.**13**  To determine ordinary meaning, we consider dictionary definitions.**14**

Most standard English-language dictionary notice definitions do not define notice in relation to audience size. For example, *Merriam-Webster.com* gives the following definitions of "notice":

> 1  a  (1): warning or intimation of something : announcement
> (2): the announcement of a party's intention to quit an agreement or relation at a specified time

---

**10** *Id.* (quoting *Children's Hosp. & Health Ctr. v. Belshe*, 188 F.3d 1090, 1096 (9th Cir. 1999)).

**11** *Id.*

**12** *See United States v. Franklin*, 785 F.3d 1365, 1367 (10th Cir. 2015) (considering whether 18 U.S.C. § 2251(d)(1) applies to a closed network).

**13** *See Sebelius v. Cloer*, 569 U.S. 369, 376 (2013); *see Animal Legal Def. Fund v. United States Dep't of Agric.*, 933 F.3d 1088, 1093 (9th Cir. 2019) ("When a statute does not define a term, we typically give the phrase its ordinary meaning." (quoting *FCC v. AT&T Inc.*, 562 U.S. 397, 403 (2011))).

**14** *See Wisconsin Cent. Ltd. v. United States*, 138 S. Ct. 2067, 2070–71 (2018); *United States v. Ezeta*, 752 F.3d 1182, 1185 (9th Cir. 2014).

(3): the condition of being warned or
notified—usually used in the phrase *on
notice*

 b: information, intelligence

2 a: attention, heed

 b: polite or favorable attention : civility

3: a written or printed announcement

4: a short critical account or review[15]

None of these definitions implicate audience size.

Relying on similar dictionary definitions, the Seventh
and Tenth Circuits have reached similar conclusions when
reviewing whether 18 U.S.C. § 2251(d)(1) prohibits
communications to groups with limited membership.[16]  In
view of these dictionary definitions, the ordinary meaning of
"notice" does not exclude one-to-one communications.

We nonetheless continue our inquiry and consider the
word modifying "notice."  Section 2251(d)(1) proscribes

---

[15] *Notice*, Merriam-Webster, https://www.merriam-
webster.com/dictionary/notice (last visited May 20, 2020) (capitalization
altered and examples omitted).

[16] *United States v. Gries*, 877 F.3d 255, 260 (7th Cir. 2017)
(reviewing two "notice" definitions and opining that "[i]n everyday
parlance, the term is not limited to warnings or notifications
disseminated to the general public"); *Franklin*, 785 F.3d at 1368
(reviewing 18 "notice" definitions and concluding that none have "a
public component") (citing *Notice*, Webster's Third New International
Dictionary 1544 (ed. Philip Babcock Gove 1993)).

"*any* notice . . . seeking or offering" child pornography.**[17]** The Supreme Court has observed that, "[r]ead naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'"**[18]** Thus, Congress's use of "any" suggests Congress intended "notice" to cover any communication that could reasonably fall within that term.**[19]** Notably, the statute does not limit notices to those that are widely disseminated to the public at large or a large group of people.

We also consider the verbs that precede "any notice." Section 2251(d)(1) prohibits "[a]ny person [from] . . . *mak[ing]*, *print[ing]*, or *publish[ing]* . . . any notice."**[20]** A review of these verbs' dictionary definitions suggests that "publish" has a public dissemination component.**[21]** We can

---

**[17]** 18 U.S.C. § 2251(d)(1) (emphasis added).

**[18]** *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 219 (2008) (alteration in original) (quoting *United States v. Gonzales*, 520 U.S. 1, 5 (1997)); *accord Olympic Forest Coal. v. Coast Seafoods Co.*, 884 F.3d 901, 906 (9th Cir. 2018) (collecting cases for the proposition that the "any" is "broad and all-encompassing"); *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1153 (9th Cir. 2010) ("The word 'any' is generally used in the sense of 'all' or 'every' and its meaning is most comprehensive.") (quoting *Fleck v. KDI Sylvan Pools, Inc.*, 981 F.2d 107, 115 (3d Cir. 1992)).

**[19]** *See Harrison v. PPG Indus., Inc.*, 446 U.S. 578, 588–89 (1980) (construing Section 307(b)(1) of the Clean Air Act expansively in light of a 1977 amendment that added the word "any").

**[20]** 18 U.S.C. § 2251(d)(1) (emphasis added).

**[21]** *Merriam-Webster* includes two representative definitions of "publish": "to make public announcement of" and "to disseminate to the public." *Publish*, Merriam-Webster, https://www.merriam-

assume that "print" often could refer, and even more typically may refer, to a more public dissemination. But as we have explained, the phrase "make[] . . . any notice" is quite clearly not limited to public dissemination and can include one-to-one communications that are fairly characterized as "notices." At least in the context of this case, which involves a defendant who is offering child pornography, we do not think the statute's inclusion of the words "publish" and "print" requires us to adopt an unnaturally narrow interpretation of the phrase "make[] . . . any notice." Once again, if Congress had intended to limit the statute in the way Cox suggests, we think it would have chosen different language than it did.

At this stage of the inquiry, in view of the ordinary meaning of the statutory terms and § 2251(d)(1)'s proscription of "*any* notice," the statute strongly suggests that "make[] . . . any notice" can reach one-to-one communications.[22]

We also consider "the structure of the statute as a whole, including its object and policy,"[23] and "whether the proposed interpretation would frustrate or advance that purpose."[24] With its child pornography legislation, Congress enacted a "comprehensive" regulatory scheme that

---

webster.com/dictionary/publish (definitions 1b and 2a, respectively) (last visited June 6, 2020).

[22] 18 U.S.C. § 2251(d)(1) (emphasis added).

[23] *Williams*, 659 F.3d at 1225 (quoting *Children's Hosp. & Health Ctr.*, 188 F.3d at 1096).

[24] *See United States v. Mohrbacher*, 182 F.3d 1041, 1049 (9th Cir. 1999).

"seeks to regulate (more accurately, exterminate) the entire child pornography market."[25]  Construing "notice" to include one-to-one communications furthers this broad statutory objective.

In summary, based upon the statute's plain meaning, we hold that one-to-one communications can satisfy the "notice" requirement under 18 U.S.C. § 2251(d)(1).

## 2. Sufficiency of the Evidence

Applying our construction of § 2251(d)(1) to the instant case, we decide that a rational fact-finder could find that Cox made a notice offering child pornography when she sent a one-to-one electronic message with a Dropbox link and informed Hennis that it contained child pornography.  As discussed above, the critical Kik messages conveyed Dropbox links and the message "[g]oodies for daddy." Taken together and when viewed in the context of the overall conversation between Cox and Hennis, these Kik messages reflected an offer to provide child pornography and means for how to gain access to it.  This is sufficient to constitute "mak[ing] . . . any notice . . . offering . . . to . . . exchange, . . . display, distribute, or reproduce" child pornography."[26] The district court therefore did not err in denying Cox's Rule 29 motion for a directed verdict as to the § 2251(d)(1)(A) count.

---

[25] *United States v. McCalla*, 545 F.3d 750, 755 (9th Cir. 2008); *accord United States v. Maxwell*, 446 F.3d 1210, 1217 n.7 (11th Cir. 2006).

[26] 18 U.S.C. § 2251(d)(1).

### 3. *United States v. Caniff*

Considering our ruling, we do not reach Cox's argument that § 2251(d)(1) notice is unconstitutionally vague (or whether this argument has been waived). We nonetheless observe that the Eleventh Circuit case Cox relies upon for her associated rule of lenity argument—*United States v. Caniff*[27]—is distinguishable.

*Caniff* is the only other case in which a court of appeals directly considered whether § 2251(d)(1) notice applies to one-to-one communications.[28] In *Caniff*, the 32-year-old defendant engaged in a text-message conversation with an FBI agent who posed as a 13-year-old girl.[29] In the text conversation, the defendant asked the purported 13-year-old girl for sexually explicit pictures of herself.[30] For this conduct, the defendant was charged and convicted of "mak[ing]" a "notice" "*seeking*" to "*receive*" child pornography in violation of § 2251(d)(1)(A).[31] (In contrast, Defendant Cox was charged with "mak[ing]" a "notice" "offering" to "display, distribute, or reproduce" child pornography.[32])

---

[27] 955 F.3d 1183 (11th Cir. 2020) (per curiam).

[28] *See id.* at 1185.

[29] *Id.* at 1185–86.

[30] *Id.* at 1186.

[31] *Id.* at 1186–87 (quoting 18 U.S.C. § 2251(d)(1)(A) (emphasis added)).

[32] *See* 18 U.S.C. § 2251(d)(1)(A).

On appeal, Caniff argued that 18 U.S.C. § 2251(d)(1) was ambiguous when applied to this conduct.[33]   The Eleventh Circuit agreed.   After applying the tools of statutory interpretation, the Eleventh Circuit had "serious doubts" about the statute's applicability to Caniff's conduct.[34]  The court applied the rule of lenity in Caniff's favor and reversed his conviction under § 2251(d)(1)(A).[35]

The Eleventh Circuit's holding was based on a perceived ill fit between § 2251(d)(1) and defendant Caniff's conduct. Caniff had *asked* for pictures of the supposed 13-year-old girl, and he was therefore convicted of "mak[ing]" a "notice . . . *seeking*" to "receive" child pornography.[36] The Eleventh Circuit's decision seems to turn on its view that "mak[ing] . . . any notice . . . seeking . . . to receive" is an unusual phrasing that created "serious doubts" about the applicability of § 2251(d)(1) to Caniff's conduct.[37]

We do not have the same doubts about the applicability of § 2251(d)(1) to Cox's conduct.  Cox *sent* Hennis a link to child pornography.  The jury found Cox guilty of "mak[ing]" a "notice . . . *offering*" to "display, distribute, or reproduce"

---

[33] *Caniff*, 955 F.3d at 1187.

[34] *Id.* at 1191–92; *see also id.* at 1185 ("Caniff's private, person-to-person text messages asking an individual he thought was a minor to send him sexually explicit pictures of herself cannot support a conviction for 'mak[ing]' a 'notice' to receive child pornography in violation of 18 U.S.C. § 2251(d)(1).").

[35] *Id.* at 1193.

[36] 18 U.S.C. § 2251(d)(1)(A) (emphasis added); *Caniff*, 955 F.3d at 1185–86.

[37] *See Caniff*, 95 F.3d at 1189–91.

child pornography.**38**   The § 2251(d)(1)(A) application to Cox's conduct does not warrant application of the rule of lenity.

We have no occasion to decide whether all one-to-one communications will be a § 2251(d)(1)(A) notice violation. Today, we hold only that one-to-one exchanges can satisfy the legal definition of "notice" under § 2251(d)(1), and that the evidence in Cox's case, viewed in the light most favorable to the prosecution, sufficiently supported her conviction.

## B. The District Court Did Not Err by Admitting the August 2015 Hennis-Cox Kik Messenger Exchange.

Cox and Hennis's Kik Messenger conversation occurred in two distinct times: (1) from August 24 to 27, 2015, and (2) from November 22, 2015 to January 18, 2016**.**   The indictment charged violations of child pornography laws only in the latter period.

Before trial, Cox sought to exclude evidence of the initial August 2015 exchange.   The district court denied Cox's motion.   The district court reasoned that while the August 2015 messages were not admissible as direct evidence of Cox's December 2015 crimes, the messages were admissible under Federal Rule of Evidence 404(b) to prove Cox's identity as the JadeJeckel user and to prove an absence of mistake.   The district court also found the August 2015 communications were not unduly prejudicial under Federal Rule of Evidence 403.

---

**38** 18 U.S.C. § 2251(d)(1)(A) (emphasis added).

With this appeal, Cox argues that the district court erred in admitting the August 2015 messages under Rule 404(b) and 403.

### 1.  Rule 404(b)

Rule 404(b)(1) says that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Nonetheless, the Rule provides that such other-act "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."[39]

The Ninth Circuit uses a four-part test to determine the admissibility of evidence under Rule 404(b):

> Such evidence may be admitted if: (1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged.[40]

"The government 'has the burden of proving that the evidence meets all of the above requirements.'"[41]  This court

---

[39] Fed. R. Evid. 404(b)(2).

[40] *United States v. Bailey*, 696 F.3d 794, 799 (9th Cir. 2012) (quoting *United States v. Romero*, 282 F.3d 683, 688 (9th Cir. 2002)).

[41] *Id.* (quoting *United States v. Arambula-Ruiz*, 987 F.2d 599, 602 (9th Cir. 1993)).

reviews a district court's admission of Rule 404(b) evidence for an abuse of discretion.[42]

Here, the district court did not abuse its discretion when it admitted the August 2015 messages under Rule 404(b).

As to the first requirement, the August 2015 Hennis-Cox exchange tends to prove two material issues—Cox's use of the JadeJeckel account (identity) and the absence of mistake. The August 2015 messages show Cox's strong interest in child pornography, negating the possibility that the later child pornography transmissions were mistakes. The August messages also included substantial evidence identifying Defendant Sarah Cox as using the JadeJeckel moniker. For example, in the August 2015 exchanges, JadeJeckel sent a non-public nude selfie of Cox and described personal information that applied to Cox.

As to the timeliness requirement, the August 2015 exchange occurred approximately three to four months before the charged conduct.[43]

With regards to the need to show that Cox committed the earlier acts, enough evidence suggested that Cox was the August 2015 JadeJeckel user. As described, there was considerable evidence identifying Cox as JadeJeckel.[44]

---

[42] *United States v. Carpenter*, 923 F.3d 1172, 1180–81 (9th Cir. 2019).

[43] *See United States v. Lozano*, 623 F.3d 1055, 1059-60 (9th Cir. 2010) (per curiam) (concluding that three years was not too remote).

[44] *See Romero*, 282 F.3d at 688 (observing that the third prong of our Rule 404(b) test is a "low threshold").

In consideration of the final requirement, the August 2015 messages were similar to the November 2015 to January 2016 conversations, which included the criminal acts charged. Both sets of messages involved the same participants and their shared interest in child pornography.

The Government satisfied its Rule 404(b) burden. The district court did not abuse its discretion in admitting the August 2015 conversation under Rule 404(b) to prove Cox's identity and absence of mistake.

## 2. Rule 403

"Even if the proffered evidence satisfies these [four Rule 404(b)] requirements, the district court should decline to admit it [under Rule 403] if its probative value is substantially outweighed by the danger of unfair prejudice."[45] We review the district court's admission of evidence under Rule 403 for an abuse of discretion.[46]

We are satisfied that the district court did not abuse its discretion under Rule 403 when it admitted the August 2015 Kik conversation.

The August 2015 exchange's probative value was substantial. The trial largely concerned only one contested issue—the identity of JadeJeckel. The August exchange included significant evidence linking Cox to the JadeJeckel account.

---

[45] *United States v. Banks*, 514 F.3d 959, 976 (9th Cir. 2008) (internal quotation marks omitted).

[46] *United States v. Flores-Blanco*, 623 F.3d 912, 919 n.3 (9th Cir. 2010).

As to the danger of unfair prejudice, the August 2015 messages included prejudicial evidence. In the August 2015 messages, Cox and Hennis discussed murdering a mother to steal a child and their desire to kidnap, enslave, and rape children. But other-act evidence in sex-crimes cases is often emotionally charged and inflammatory, and this does not control the Rule 403 analysis.[47]

Other-act evidence should be considered in the context of each case.[48] Here, the August 2015 messages were prejudicial but no more prejudicial than the November 2015 to January 2016 messages. The November 2015 to January 2016 messages included actual child rape and child sexual assault images and videos. In this context, the August 2015 messages were not unduly prejudicial.

The district court recognized that the August 2015 messages were potentially prejudicial but found that their probative value justified admission. "The district court is to be given 'wide latitude' when it balances the prejudicial

---

[47] *See United States v. LeMay*, 260 F.3d 1018, 1027–30 (9th Cir. 2001) (concluding that evidence of defendants' prior acts of child molestation, admitted under Federal Rule of Evidence 414, did not need to be excluded under Rule 403).

[48] *United States v. Jayavarman*, 871 F.3d 1050, 1064 (9th Cir. 2017) ("That [probative] value was not substantially outweighed by any risk of unfair prejudice that might have arisen from the evidence, especially in the context of other evidence adduced at trial."); *see also LeMay*, 260 F.3d at 1031 ("[E]vidence of a defendant's prior sex crimes will always present the possibility of extreme prejudice, and that district courts must accordingly conduct the Rule 403 balancing inquiry in a careful, conscientious manner that allows for meaningful appellate review of their decisions.").

effect of proffered evidence against its probative value."**49** Here, the district court did not abuse its discretion in admitting the evidence.

## III.  CONCLUSION

Based on the plain statutory language, we hold that one-to-one communications can satisfy the legal definition of "notice" under 18 U.S.C. § 2251(d)(1).  Applying this construction to the instant case, we conclude that a rational trier of fact could find that Cox made a notice offering child pornography when she sent a one-to-one electronic message linking to a Dropbox account that contained child pornography.  We also hold that the district court did not abuse its discretion when it admitted the uncharged August 2015 messages under Federal Rule of Evidence 404(b).

The judgment of conviction is **AFFIRMED.**

---

**49** *United States v. Higuera-Llamos*, 574 F.3d 1206, 1209 (9th Cir. 2009) (quoting *United States v. Spencer*, 1 F.3d 742, 744 (9th Cir. 1993)).